WESTERN UNION TELEGRAPH COMPANY *v.* STATE.

Opinion delivered March 18, 1907.

1. STATUTE—EFFECT OF REPEAL.—Under Kirby's Digest, § 7797, the repeal of a criminal or penal statute does not affect offenses committed or forfeitures accrued prior to its repeal. (Page 314.)

2. FOREIGN CORPORATIONS—REASONABLENESS OF REGULATION.—A statute which requires foreign corporations to file with the Secretary of State certified copies of their articles of incorporation and to pay a reasonable fee therefor is not discriminatory where the same require-ment was made of domestic corporations. (Page 315.)

3. SAME—REGULATION—INTERSTATE COMMERCE.—The act of February 16, 1899, as amended by the act of May 8, 1899, requiring foreign corporations doing business in the State to file copies of their charters or certificates of incorporation with the Secretary of State does not apply to foreign corporations engaged exclusively in inter-

state commerce, but only to such corporations as are engaged in intrastate business. (Page 315.)

4. SAME—RIGHT TO IMPOSE TERMS UPON.—As the Constitution expressly reserves the right of the State to alter the charter rights of corporations doing business here, whether foreign or domestic, the State has the same right to impose terms on a foreign corporation already in the State as it has to impose them on a corporation which came into the State after the enactment of the statute. (Page 318.)

5. SAME—REGULATION OF TELEGRAPH COMPANIES.—Kirby's Digest, § 7946, which compels all telegraph companies doing business in the State to accept and transmit all messages tendered to them, does not apply to telegraph companies engaged only in interstate and governmental business pursuant to the act of Congress. (Page 318.)

6. PENAL STATUTE—VALIDITY.—A penal statute is not invalid because it prescribes a minimum penalty, but fails to prescribe the maximum penalty. (Page 319.)

7. SAME—LIMITATION.—Under Kirby's Digest, § 5068, actions to recover penalties must be commenced within two years after the offense is committed, or the cause of action will be barred. (Page 319.)

8. SAME—WAIVER OF DEFENSE OF STATUTE OF LIMITATIONS.—The statute of limitations must be pleaded in a civil action to recover a statutory penalty, or it will be deemed to have been waived. (Page 319.)

9. SAME—REDUCTION OF PENALTY—MISTAKE.—Where a statute imposing a penalty was repealed before an action to recover the penalty was instituted, a judgment fixing the amount of the penalty in a sum exceeding the minimum, being assessed under the erroneous impression that the statute was still in force, will be reduced to the minimum fixed by the statute. (Page 320.)

Appeal from Pulaski Circuit Court, Second Division; *Edward W. Winfield*, Judge; affirmed.

*Rose, Hemingway, Cantrell & Loughborough,* for appellant.

Sections 825 and 832 of Kirby's Digest have no application to corporations engaged in interstate commerce. 57 Ark. 24; 54 *Id.* 566.

The States can not tax any instrumentality of the government or interstate commerce. 96 U. S. 1. Commercial intercourse is an element of commerce. 9 Wheat. 1. The electric telegraph is one of the necessities of commerce. *Id.* A State has no right to exclude a telegraph company from doing business within its borders because its tax is not paid. 125 U. S. 530, No State can exact any license fee of any corporation engaged

in interstate commerce, though it also does a local business.. 127 U. S. 640. It is the duty of Congress to take care that: transmission of intelligence between the States be not obstructed. by State legislation. 96 U. S. 1. State laws are unconstitutional which impose a tax on messages sent by any person from one· State to another. 105 U. S. 460. A State can not tax property· beyond its borders. 15 Wall. 300; 153 U. S. 646. A State may· exclude from its borders corporations not engaged in interstate· commerce, but when the corporation has been admitted and has. made investments here, it becomes a "person," within the mean-- ing of the Federal Constitution. 118 U. S. 394; 142 *Id.* 386;. 165 *Id.* 150; 169 U. S. 466. The statute denies to appellant. the equal protection of the laws, and takes its property without due process of law. 118 U. S. 369. Where the Legislature· takes up a whole subject, and covers the entire ground of a former statute, and intends it as a substitute therefor, the prior· act will be repealed. 27 Ark. 419; 31 *Id.* 17; 46 *Id.* 438; 47· *Id.* 488; 65 *Id.* 508.

*Lewis Rhoton* and *De E. Bradshaw,* for appellee.

The conditions upon which a foreign corporation is permit-- ted to do business within a State are entirely within the discre- tion of the Legislature. 69 Ark. 521. The same is true of tele- graph companies. 42 Am. St. 476. The act is not un- reasonable. The State may regulate the manner in which the· company's lines shall be constructed and maintained over its. highways. 107 N. Y. 593; 145 U. S. 175; 16 Fed. 309; 12 Mo. App. 494; 148 Pa. St. 117; 12 Atl. 144. The State may pro-- vide that offices once established shall not be discontinued. 74 Miss. 80. The State may prescribe the rate to be charged for· messages sent from one point in the State to another. 186 U. S. 238; 113 N. C. 213. The granting to Congress of authority· to regulate interstate commerce did not involve the surrender by the States of their police powers. 155 U. S. 471. Trains carrying interstate commerce may be required by the State· through which they pass to stop at certain villages. 173 U. S. 285. The passage of this act was a legitimate exercise of police· power. 183 U. S. 21.

If appellant had restricted its business to governmental and·

interstate commerce, then there might be some room for its contention here. But if its contention be correct, then it can go into business which is in competition with the citizens of our own State, and refuse to comply with the law because some of its business is interstate or foreign commerce.

McCULLOCH, J. Appellant is a corporation organized under the laws of the State of New York, and does a telegraph business throughout the United States and foreign countries, and also does local or intrastate business in the State of Arkansas.

This is an action instituted by the Prosecuting Attorney on behalf of the State against appellant to recover the penalty prescribed by statute for its failure to file with the Secretary of State a copy of its articles of corporation and to pay the fee therefor required by law.

The statute alleged to have been violated by appellant is as follows:

"Section 2. Every company or corporation incorporated under the laws of any other State, Territory or country, now or hereafter doing business in this State, shall file in the office of the Secretary of State of this State a copy of its charter, or articles of incorporation, or association; or, in case such company or corporation is incorporated merely by a certificate, then a copy of its certificate of incorporation, duly authenticated and certified by the proper authority. The Secretary of State shall cause all such charters, articles of incorporation, or association, so filed, to be duly recorded in a book kept for that purpose. And such corporation shall be required to pay into the treasury of the State incorporating and other fees equal to those required of similar corporations formed within and under the laws of this State. Upon compliance with the above provisions by said corporations, the Secretary of State shall cause to be issued to said corporation a copy of such charter, or articles of incorporation, or certificate so filed, properly certified under the seal of his office, and a copy of such charter or articles of incorporation or certificate, certified to by the Secretary of State, shall be taken by all the courts of this State as evidence that the said corporation has complied with the provisions of this act, and is entitled to all the rights and benefits therein conferred. And such corporation shall be entitled to all the rights and priv-

ileges and subject to all the penalties conferred and imposed by the laws of this State upon similar corporations formed and existing under the laws of this State; provided, that the provisions of this act requiring copy of original articles of incorporation or charter, and certificate naming an agent, and to pay certain fees therefor, shall not apply to railroad companies which have heretofore built their lines of railroad into or through this State; provided, further, that the provisions of this act are not intended and shall not apply to "drummers" or traveling salesmen soliciting business in the State for foreign corporations which are entirely non-resident.

"Section 3. On and after the going into effect of this act, any foreign corporation, as defined above, which shall refuse or fail to comply with this act, shall be subject to a fine of not less than one thousand dollars ($1000), to be recovered before any court of competent jurisdiction; and it is hereby made the duty of the prosecuting attorneys of the different judicial districts of this State to see to the proper enforcement of this act. All such fines so recovered shall be paid into the general revenue fund of the county in which the cause shall accrue. In addition to which penalty, or after the going into effect of this act, no foreign corporation, as above defined, which shall fail to comply with this act can maintain any suit or action, either legal or equitable, in any of the courts of this State upon any demand, whether arising out of contract or tort." Section 2, act February 16, 1899, as amended by act May 8, 1899, and section 3, act February 16, 1899.

Section four of the same act allowed corporations then doing business in the State ninety days from its passage within which to comply with its terms.

The case was tried before the court sitting as a jury, and the court adjudged the defendant corporation to be guilty of violating the statute hereinbefore quoted, fixed the penalty at a fine of $2500, and rendered judgment accordingly.

We have held in another case against this appellant, decided today, that the section two of the act of 1899, upon which this prosecution is based, has been repealed by a later statute (Act 1901, p. 386) on the same subject, but the complaint alleges and

the evidence establishes a violation of the statute by appellant, if at all, before its repeal.

By statute of this State it is provided that "when any criminal or penal statute shall be repealed, all offenses committed or forfeitures accrued under it while it was in force, shall be punished or enforced as if it were in force, notwithstanding such repeal, unless otherwise expressly provided in the repealing statute." Act December 21, 1846, Kirby's Digest, § 7797. The force of this statute has been recognized and upheld by the court in several cases. *McCuen* v. *State,* 19 Ark. 634; *Volmer* v. *State,* 34 Ark. 487; *Cloud* v. *State,* 36 Ark. 151.

The defense relied upon by the appellant is predicated upon the propositions of law set forth in the following declarations which its counsel asked the trial court to make, and which were each refused:

"First. The defendant is engaged in interstate and foreign commerce, and the act relied upon by the plaintiff is, as to it, an interference with the power of Congress over interstate and foreign commerce.

"Second. The defendant having accepted the provision of the Act of Congress of July 24, 1866, entitled "An act to aid in the construction of Telegraph Lines and to secure to the Government the use of the same for postal, military and other purposes," it has the right to do business in this State, and the act relied upon by the plaintiff can have no application to the defendant.

"Third. The defendant can not be excluded from doing business in the State of Arkansas, because to do so would operate as a taking of the defendant's property without due process of law, and would be a denial to the defendant of the equal protection of the law guarantied by the Fourteenth Amendment to the Constitution of the United States."

It must be readily conceded, and is conceded in argument by counsel for the State, that it is beyond the power of the State, under the guise either of a license tax or police regulation, to impose burdens upon interstate commerce or to deny a foreign corporation the right to engage in such commerce in the State. This question is now too well settled to be debated. *Leloup* v.

*Port of Mobile,* 127 U. S. 640; *Crutcher* v. *Kentucky,* 141 U. S. 47; *Brennan* v. *Titusville,* 153 U. S. 289. On the other hand, counsel for appellant concede in the argument that the State has power to impose reasonable terms upon the right of a foreign corporation to carry on intrastate commerce, even though such corporation may be also engaged in interstate commerce. *Osborne* v. *Florida,* 164 U. S. 650; *Pullman Co.* v. *Adams,* 189 U. S. 420; *Allen* v. *Pullman Co.,* 191 U. S. 171. The issue in the case, therefore, narrows to the question whether the statute under consideration was an attempt on the part of the State to regulate interstate commerce and to impose a burden upon corporations doing an interstate business, or whether it merely imposed terms and conditions upon which a foreign corporation might do intrastate business herein.

It should be observed in the outset that the statute did not discriminate between domestic and foreign corporations, but required the latter to do, in substance, what was required of the former by other laws of the State. Nor did it impose unreasonable terms. It only required the corporation to file with the Secretary of State certified copies of the articles of incorporation and pay a fee of $25, the same as domestic corporations. In these respects the statute can be met with no well-founded objection. *American Smelting & Refining Co.* v. *Colorado* ex rel. *Lindsley,* 27 S. C. Rep. 198. We are then to consider the sole question whether the Legislature, in enacting this statute, did what it had the undoubted power to do, or whether it attempted to do that which was clearly beyond its power to do.

The State's power in this respect was as well known then as now, and the lawmakers are presumed to have been advised of the limitations upon their power in dealing with the subject of regulation of foreign corporations. This court had then rendered a decision defining the limits within which legislation on this subject might go. *Gunn* v. *White Sewing Machine Co.,* 57 Ark. 24. Shall we now construe this statute to mean what this court, when it was enacted, had then so recently said was an obvious transcension of the State's power, or shall we say that the lawmakers intended to have the State put in force a regulation which had been decided to be within its power? These are fit things for our consideration in determining whether

or not the statute can be sustained. *Hartford Fire Ins. Co.* v. *State,* 76 Ark. 303; *Wells, Fargo & Co.* v. *Crawford County,* 63 Ark. 576. It is the duty of the court to give the statute such construction, if reasonably consistent with the language employed, as will render it constitutional and valid. "Whenever an act can be so construed and applied," says Sutherland, "as to avoid conflict with the Constitution, and give it the force of law, this will be done. Where one construction will make a statute void for conflict with the Constitution, and another would render it valid, the latter will be adopted, though the former at first view is otherwise the more natural interpretation of the language. Every intendment should be made to favor the constitutionality of a statute. The Legislature is presumed to act in view of the Constitution, and not to intend a violation of its provisions or the enactment of an invalid law." 2 Lewis' Sutherland on Statutory Construction, § 498.

The Supreme Court of the United States, in announcing a rule of construction of statutes said: "But if there were reason for two constructions, both equally obvious and reasonable, the court must, in deference to the Legislature of the State, assume that it did not overlook the provisions of the Constitution, and designed the act of 1871 to take effect. Our duty, therefore, is to adopt that construction which, without doing violence to the fair meaning of the words used, brings the statute into harmony with the provisions of the Constitution." *Granada County Supervisors* v. *Brogden,* 112 U. S. 261; *Dow* v. *Norris,* 4 N. H. 16; *People* v. *Supervisors,* 17 N. Y. 235.

The case of *Wells, Fargo & Co.* v. *Crawford County,* 63 Ark. 576, involved a somewhat similar question. The court had under consideration a statute which required express companies and certain other corporations doing business in this State to file with the board of railroad commissioners a statement or certificate showing, among other things, the amount of capital stock subscribed, the par value and market value thereof, and the total number of miles of railroad in and out of the State over which such express company did business, etc., and provided that the board, when such certificate should be filed, should proceed to ascertain the entire value of the capital stock of such company and fix the sum at which the property of the company

should be assessed for the purposes of taxation by taking the same proportion of the aggregate value of the capital of any such corporation as the number of miles of railway in this State over which it carried on business bore to the aggregate number of miles of railway within as well as without the State. It was contended that the statute compelled the board of railroad commissioners to assess the property of the express company according to a method which would result in an unequal and unjust valuation of the property, and which would, in effect, be an assessment of its property situated out of the State. The court held that such a construction would render the statute void, but that in order to give effect to the statute and render it valid another construction should be placed upon it. The court there said: "We must presume therefore that the Legislature knew those provisions and did not intend that the statute should conflict with the Constitution. The Legislature knew that it had no power to tax appellant on property situated beyond the limits of the State, and we must presume that there was no intention to do so."

The court quoted with approval in that case the following language of Judge Cooley:

"It is the duty of the court to uphold a statute when the conflict between it and the Constitution is not clear, and the implication, which must always exist that no violation of the Constitution has been intended by the Legislature may require it, in some cases where the meaning of the Constitution is not in doubt, to lean in favor of such a construction of the statute as might not at first view seem obvious and natural. For, as a conflict between the statute and the Constitution is not to be implied, it would seem to follow that the court, if possible, must give the statute such a construction as will enable it to have effect. This is only saying in another form of words that the court must construe the statute in accordance with the legislative intent, since it is always to be presumed the Legislature designed the statute to take effect, and not to be a nullity." Cooley, Const. Lim. (6 Ed.) 218.

In Florida a statute was passed providing that "all express companies doing business in the State" should pay a license fee in cities and towns, and the Supreme Court of that State con-

strued the statute to apply only to business that is domestic or intrastate, for the reason that any other construction would place it in conflict with the Federal Constitution. *Osborne* v. *State,* 33 Fla. 162.

The Supreme Court of Mississippi similarly construed a statute imposing a privilege tax "on each sleeping and palace car company carrying passengers from one point to another in this State." *Pullman Car Co.* v. *Adams,* 78 Miss. 814.

The Supreme Court of Massachusetts also construed a statute of general application to all corporations doing business in the State in a similar way, and said: "But it is a rule of law that a statute which would be unconstitutional as applied to a certain class of cases, and is constitutional as applied to another class, may be held to have been intended to apply only to the latter class, if this seems in harmony with the general purpose of the Legislature." *Att'y Gen'l* v. *Electric Storage Battery Co.,* 188 Mass. 239.

We think, therefore, that this statute must be construed to have been intended only to impose terms upon the right of a foreign corporation to carry on intrastate business, and that it was a valid statute.

The State had the same right to impose those terms on a foreign corporation already in the State as it did to impose them on a corporation which came into the State after the enactment of the statute. *Woodson* v. *State,* 69 Ark. 521; *Orient Ins. Co.* v. *Daggs,* 172 U. S. 566; *American Smelting & Refining Co.* v. *Colorado* ex rel. *Lindsley, supra.* The Constitution of this State expressly reserves the right of the State to alter the charter rights of corporations doing business here, either domestic or foreign. Const. 1874, art. 12, § § 6, 11.

But it is argued that another statute of this State (Kirby's Digest, § 7946) compels all telegraph companies doing business in the State to accept and transmit all messages tendered to them, and that it must, therefore, whether it will or no, do an intrastate as well as interstate business. That statute must, however, for the reasons hereinbefore stated, be construed to apply to companies doing the class of business to which the message belongs. If a company is not doing intrastate business, it can

not, under this statute, be compelled to receive and transmit messages belonging to that class, even though it may be in the State doing interstate and governmental business pursuant to the act of Congress.

The section of the statute which fixes the penalty is peculiarly phrased in that it prescribes only a minimum penalty, failing to prescribe the maximum. This, however, does not render the penalty feature of the statute invalid, and the trial court or jury could assess a penalty in excess of the minimum amount prescribed by the statute. 13 Am. & Eng. Enc. of Law, p. 62; *Frese* v. *State,* 23 Fla. 267; In re *Yell,* 107 Mich. 228.

The judgment of the circuit court is affirmed.

## ON REHEARING.

Opinion delivered April 22, 1907.

McCULLOCH, J. Appellant contends, in a petition for rehearing, that inasmuch as the act of 1899 imposing the penalty adjudged in this case was repealed more than two years before the commencement of this action, the action is barred by limitation.

The statute provides that all actions upon penal statutes to recover the penalty shall be commenced within two years after the offense shall have been committed, or the cause of action shall have accrued. Kirby's Dig. § 5068. The offense stated in the complaint continued up to the repeal of the statute imposing the penalty, and was therefore barred when the action was commenced.

The statute of limitation was not pleaded as a defense. Was it necessary to do so in order to invoke the benefit of the statute bar?

It is contended on behalf of appellant that in actions to recover a penalty the statute of limitation need not be pleaded because, it is said, the cause of action is dependent upon the institution of the action to recover the penalty within the time prescribed, and the expiration of the statutory period cuts off the right of action. The Supreme Court of Colorado in an action to recover a penalty of double the value of stock killed by a railroad, the statute authorizing a recovery of such penalty on

account of the failure of the railroad company to post notices of the killing of stock, held that the defense of limitation was available without a special plea being interposed. We have recently held to the contrary under a similar statute. *St. Louis, I. M. & So. Ry. Co. v. Stites,* 80 Ark. 72.

The general rule established by the decisions of this and most other courts is that in all civil actions the statute must be pleaded in some way, otherwise it is deemed to have been waived as a defense. The Encyclopedia of Pleading and Practice (vol. 13, p. 282) states the rule of practice to be that in actions to recover penalties either a plea of the general issue or a special plea of the statute of limitations is sufficient to render it available as a defense. This statement is sustained by adjudged cases. *Moore v. Smith,* 5 Me. 490; *Frohock v. Pattee,* 38 Me. 103; *Pike v. Jenkins,* 12 N. H. 255; *Gebhart v. Adams,* 23 Ill. 397.

The Code of Criminal Procedure of this State provides that by a plea of not guilty all matters of defense, other than that of former conviction or acquittal, are put in issue in criminal prosecutions. Kirby's Dig. § 2298. But a plea of the general issue is not permissible under the Code of Practice in Civil Cases. *Hecht v. Caughron,* 46 Ark. 132. And all defenses not pleaded are deemed to have been waived.

The statute imposing the penalty authorizes its recovery by civil action. *Railway Co. v. State,* 56 Ark. 166; *Hammond Packing Co. v. State,* 81 Ark. 519. This is the construction we place upon it; and when that is determined, it follows that the rules of practice in civil actions govern.

We are also asked by appellant to reduce the penalty from the amount assessed by the trial court, $2,500, to the minimum fixed by statute. Ordinarily, this court will not reduce the amount of penalty assessed by a trial court or jury, unless it is clearly excessive and amounts to an abuse of the discretion lodged by law in the court or jury. But the learned trial judge assessed the penalty in this case under the erroneous impression that the statute was still in force, and that the offense continued from the time the statute went into effect until the commencement of this action. Doubtless, this influenced him in fixing the penalty at more than the minimum sum. It appears to us

that if he had arrived at the correct conclusion that the statute had been repealed for more than four years, and that the defendant had not, for that length of time, been doing business in the State in violation of the statute, he would not have assessed a greater penalty than the minimum amount fixed by the statute. These considerations alone constrain us to reduce the penalty to $1,000, the minimum amount fixed by the statute. The cost of appeal will, however, be adjudged against appellant.

The petition for rehearing is therefore denied, but the judgment is modified as above indicated.