## White Sewing Machine Company, Appellant, v. Norman M. Harris et al., Appellees.

1. CORPORATIONS—*foreign corporation must comply with new act.* A foreign corporation which has complied with the act of 1897 must nevertheless comply with the new act of 1905, as the terms of the latter act are substantially different from those of the former.

2. CONTRACTS—*what does not impair obligation of.* Passing a new law requiring all foreign corporations whether licensed under a former act or not, to perform further conditions before doing business in this state, does not impair the obligation of contracts, since such former license is not an irrepealable contract, and is not a contract between the state and the corporation that the state will not exact further conditions from such corporation.

DUNCAN, J., dissenting.

Action of debt. Appeal from the Circuit Court of Pulaski county; the Hon. A. W. LEWIS, Judge, presiding. Heard in this court at the March term, 1910. Affirmed. Opinion filed August 15, 1910.

WALL & MARTIN, for appellants.

C. S. MILLER and CHARLES L. RICE, for appellees.

MESSRS. JUSTICES HIGBEE and SHIRLEY delivered the opinion of the court.

White Sewing Machine Company sued the defendants in an action of debt on bond for $600. The declaration is in the usual form assigning breaches of the condition of the bond as the failure of said Norman M. Harris to pay six promissory notes. The defendants filed a special plea in substance that at the time of the execution of said bond the plaintiff was a corporation organized in the State of Ohio and doing business in said state for profit, and is not a railroad or telegraph company, is not engaged in the insurance, banking or money lending business, and that said writings were executed in the State of Illinois to secure the purchase price of goods sold by plaintiff in Illinois since July 1, 1905. Avers that plaintiff had

not prior to this suit complied with all the require-
ments of an act entitled "An act to regulate the ad-
mission of foreign corporations for profit, to do bus-
iness in the State of Illinois," approved May 18, 1905,
in force July 1, 1905; and was not licensed and em-
powered by the Secretary of State under said statute
to do business in this State, and therefore plaintiff
cannot maintain its action.   Plaintiff in its replica-
tion replied that on September 10, 1897, it made ap-
plication to the Secretary of State for a license and
complied with all the terms of the foreign corpora-
tion act entitled "An act to require every foreign
corporation doing business in this State to have a pub-
lic office or place in this State to transact its business,"
etc., approved May 26, 1897, in force July 1, 1897, and
obtained a certificate from said Secretary of State
empowering it to do business in this State for ninety-
nine years, etc.   A general demurrer to said replica-
tion was filed by the defendants.   The court entered
judgment on the demurrer in favor of defendants and
against the plaintiff for costs and barring its suit, etc.,
and plaintiff electing to stand by its replication ap-
pealed.   It is conceded by both parties to this suit that
the only question in this case for our decision, is
whether or not a foreign corporation which has quali-
fied to do business in Illinois under said Act of 1897,
has to again qualify under the said act of 1905 in order
to continue doing business in this State.

The said Act of 1897 was amended by adding a
few minor details, April 22, 1899.   Session Laws of
1899, p. 118.   No substantial change as to the require-
ments of foreign corporations to obtain a license to
do business in this State was made by this amend-
ment; and, so far as we are aware, no contention has
ever been made that they were required by this amend-
ment to requalify in order to continue to do business
here.   Section 4 of said act was also amended May
13, 1905; but the amendment in no way affects the
question here, and it was repealed before it took ef-

fect by the express provisions of section 8 of the Act of 1905, now under consideration. Session Laws of 1905, 125 and 128. The provisions and regulations with which foreign corporations for profit were required to comply before they could be permitted to transact any business in this State, as provided by the statute of 1897 and the amendments thereto, are found in paragraphs 67b and 67c of chapter 32 of Hurd's Revised Statutes of 1899, p. 466. For the purpose of aiding a proper comparison of these two paragraphs with paragraphs 67c and 67d of the new act of 1905, wherein are found the new provisions and requirements to be met by such corporations, in chapter 32 of Hurd's Rev. Stat. 1908, p. 539, we here below give the provisions of the old statute rearranged and transposed so that they will follow as nearly as practicable in the same order that they are found in the new act; and for convenience we will number the paragraphs 67c and 67d as numbered in the new act, and will follow each quotation from the old act with the number of the paragraph of the old act from which such quotation is taken. The statute as amended in 1899 and as so transposed reads as follows:

67c. "Every company incorporated for the purpose of gain under the laws of any other State, territory or country, now or hereafter doing business within this State,"—"such corporation by its president, secretary or any officer thereof, shall make and forward to the Secretary of State, with the articles or certificate above provided for, a statement duly sworn to, of the proportion of capital stock of the said corporation which is represented in the State of Illinois by its property located and business transacted therein and such statement shall further show the name and address of the agent or representative of said corporation in this State."—"and shall file in the office of the Secretary of State a copy of its charter or articles of incorporation, or in case such company is incorporated merely by a certificate, then a copy of its certificate of incorporation duly certified and au-

thenticated by the officer who issued the original, or by the recorder or registrar of the office in which said original charter, articles or certificate may have been recorded.''—''Upon a compliance with the above provisions by said corporation, the Secretary of State shall give a certificate that said corporation has duly complied with the laws of this State, and is authorized to do business therein, stating the amount of its entire capital and of the proportion thereof which is represented in Illinois; and such certificate shall be taken by all courts in this state as evidence that the said corporation is entitled to all the rights and benefits of this act, and such corporation shall enjoy those rights and benefits for the time set forth in its original charter or articles of association, unless this shall be for a greater length of time than is contemplated by the laws of this State, in which event the time and duration shall be the limit of time set out in the laws of this state. Such corporation having complied, as aforesaid, shall be required to promptly report to the Secretary of State any change in the name and address of its agent or representative in this State, and any increase or decrease in its capital stock, and any increase or decrease of the proportion of its capital stock represented in this State by its property and business therein, by filing in the office of Secretary of State a statement properly sworn to, setting forth the facts: provided, that nothing in this act shall be taken or construed into releasing foreign loan, building and loan, bond investment, surety, or other corporations of like character from any provisions of law requiring them to make a deposit of money with a proper officer of the State to protect from loss the citizens of this State who may do business with such corporations: And provided, further, that the provisions of this act shall not apply to railroad or telegraph companies which have heretofore built their line of railway into or through this State, nor to insurance, banking or loaning companies.'' All foregoing in 67c, old Stat. ''And no foreign corporation established or maintained in any way for pecuniary profit of its stock-

holders or members shall engage in any business other than that expressly authorized in its charter, or the laws of this State under which it may come.'' 67b old Stat.

67d. ''Every corporation for pecuniary profit formed in any other state, territory or country, before it shall be authorized or permitted to transact business in this State, or to continue business therein, if already established, shall designate some person as its agent or representative in this State on whom service of legal process may be had if desired; shall have and maintain a public office or place in this State for the transaction of its business, and where proper books shall be kept to enable such corporation to comply with the constitutional and statutory provisions governing such corporation; and such corporation shall be subject to all liabilities, restrictions and duties which are or may be imposed upon corporations of like character organized under the general laws of this State, and shall have no other or greater powers.'' 67b old Stat. ''And shall be required to promptly report to the Secretary of State any change in the name and address of its agent or representative in this State.'' 67c, old Stat.

''Nor shall it hold any real estate except such as may be necessary and proper for carrying on its legitimate business. And no corporation incorporated under the laws of any other state, territory or country, doing business in this State, shall be permitted to mortgage, pledge or otherwise encumber its real or personal property situated in this State to the injury or exclusion of any citizen or corporation of this State who is a creditor of such foreign corporation. And no mortgage by any foreign corporation, except railroad and telegraph companies, given to secure any debt created in any other State, shall take effect as against any citizen or corporation of this State until all its liabilities due to any person or corporation in this State at the time of recording such mortgage have been paid and extinguished.'' 67b, old Stat.

''And such corporation shall be required to pay into the office of the Secretary of this State, upon the

proportion of its capital stock represented by its property and business in Illinois, fees equal to those required of similar corporations formed within and under the laws of this State." 67c, old Stat.

A careful examination and comparison of the foregoing paragraphs, comprising paragraphs 67b and 67c of the old act in a transposed form, with paragraphs 67c and 67d of the new act, show that very substantial changes and additions have been made to the old law of 1897. By paragraph 67i of the new act the said statute of 1897 with its amendments is expressly repealed, as well as "all acts and parts of acts in conflict" with the new act. By this repeal we are to understand that the new statute contains the whole law on the subject expressed in its title and that before any foreign corporation for profit shall be permitted or allowed to transact any business, or exercise any of its corporate powers in this State, other than those expressly excepted by this statute, it shall be required to comply with the provisions of the new act and shall be subject to all of the regulations prescribed therein, as is provided in 67b of the new act. After thoroughly considering the new act we think that all the sections in it are clearly intended to apply to all foreign corporations for profit, including those that have qualified under the act of 1897, except such corporations as the new act expressly excludes from its provisions. The legislature undoubtedly has the power to impose the terms by which a foreign corporation may transact business within this State. 6 Thompson on Corporations, secs. 7884 and 7887; Weidenger v. Spruance, 101 Ill. 278; People v. Rose, 207 Ill. 352; City of Danville v. Danville W. Co., 178 Ill. 299; *In Re* Estate of Speed, 216 Ill. 23.

Passing a new law requiring all foreign corporations whether licensed under a former act or not, to perform further conditions before doing business in this State, does not impair the obligation of contracts, since such former license is not an irrepealable contract, and is not a contract between the State and the

corporation that the State will not exact further conditions from such corporation. Home Ins. Co. v. Augusta, 93 U. S. 116; Armour Pack. Co. v. Vinegar Bend L. Co., 149 Ala. 205; Western U. T. Co. v. State, 82 Ark. 309; Hammond P. Co. v. Ark., 212 U. S. 322.

It is conceded by the appellant that unless it has complied with the law in relation to obtaining a license to do business in this State that it cannot recover in this case, and such is the law. Union Lead Co. v. Reedy Elevator Co., 222 Ill. 199.

There is no question made as to the sufficiency of the pleadings to present the single question as to whether or not compliance with the law of 1897 by appellant is a sufficient compliance under the act of 1905. The majority of the court are of the opinion that the changes in the new law are so considerable, and that the wording of the new act is such as to make it clear that the legislature intended to, and that the new act does, require the plaintiff to requalify under the new act before it can legally do business in this State, and not having complied with the new act that it cannot maintain its suit against appellees. To hold otherwise would, in our judgment, be in effect holding that foreign corporations doing business in this State under the old law would not be required to comply with the new regulations and burdens that are added to the former requirements by the new statute, and therefore the burdens imposed upon corporations organized for the same purpose, but under the different laws, would be unequal. All foreign corporations to which this act applies should be made to conform to the same duties and regulations before doing business in this State, and we think that under the provisions of this statute it is intended to apply to all foreign corporations whether licensed to do business under the old law or not, unless exempted therefrom by the express provisions of the act. The judgment of the lower court is therefore affirmed.

*Affirmed.*

MR. JUSTICE DUNCAN, dissenting.

I am of the opinion that the judgment of the lower court should be reversed and the cause remanded with instructions that the demurrer to the plaintiff's replication be overruled, etc.

Substantially all the provisions of the act of 1897, and particularly of sections 67b and 67c thereof relating to the requirements of foreign corporations to obtain a license to do business in this State, have been almost literally incorporated in the new act of 1905. Very few additional requirements to obtain a license to do business have been made in the new act, and when we come to examine the two acts closely many of the apparent changes are mere elaborations of the old act, mere changes in language to bring out specifically the ideas expressed in the old act. The two provisions found at the close of paragraph 67c of the old act, are found in substance in paragraphs 67e, 67h and 67j of the new act. Paragraph 67d of the old act prescribing the penalty, is substantially changed by the new act in paragraph 67g; but that section in no way changes the requirements for obtaining a license to do business here. Paragraph 67f of the new act contains entirely new provisions and powers and evidently applies to all foreign corporations licensed or not licensed prior to the new act, and by it the Secretary of State is empowered to obtain from any such foreign corporations any or all of the information obtainable under the sworn application for license of foreign corporations provided for in paragraph 67c of the new act. Corporations doing business in this State under the old act, and not licensed under the new act, could thereby, it seems, be required to furnish all the information called for by any provision of said paragraph 67c of the new act, that is to say, by the aid of this added section practically the same results may be obtained for the State in the way of disclosures from corporations licensed under the former act without their requalifying, as can be obtained from the foreign cor-

porations applying for a license under the new law.
If the Secretary of State exercised his powers under
this added section, as it is intended he shall do, there
would be little room for contention that the two classes
of corporations, those licensed under the old act and
those licensed under the new act, do not stand upon
equal footing, either in doing business here or in the
matter of requirements of them in order to continue
to transact business here. "The manifest and only
purpose of the act was to procure uniformity in the
powers, liabilities, duties and restrictions of foreign
and domestic corporations of like character, and bring
them all under the influence of the same law." Stevens
v. Pratt, 101 Ill. 206.

. . The old act is undoubtedly repealed. The new act
is a complete revision of all the law on the same sub-
jects embraced in the old act, and without the express
words of repeal would have operated as a repeal of
the former act, as the object of both acts is the same.
But whatever of the old act is restated in the revision
is continued in operation, as those parts were re-en-
acted at the identical same moment that they were re-
pealed. Sutherland on Statutory Construction, secs.
154, 155, 156 and 161. This author also says in the
same sections that a revision is a restatement of the
law in a corrected or improved form, and by adopting
a revision the legislature say the same thing, in ef-
fect, as when a particular section is amended by the
words, "so as to read as follows." In such enact-
ments or amendments he again says: "The amend-
ment operates to repeal all of the sections amended
not embraced in the amended form. The portions of
the amended sections which are merely copied with-
out change are not to be considered as repealed and
again enacted, but to have been the law all along; and
the new parts, or changed portions, are not to be taken
to have been the law at any time prior to the passage
of the amended act. The change takes effect pros-
pectively according to the general rule. But all the

provisions of the prior law amended which continue in force after the passage of the amendatory act derive their force thereafter not from the original but the amendatory act." *Id*. sec. 133 and authorities cited under note 3.

"Where there is an express repeal of an existing statute, and a re-enactment of it at the same time, or a repeal and re-enactment of a portion of it, the re-enactment neutralizes the repeal so far as the old law is continued in force. It operates without interruption where the re-enactment takes effect at the same time. The intention manifested is the same as in an amendment enacted in the form in the preceding section ('so as to read as follows'). Offices are not lost; corporate existence is not ended; inchoate statutory rights are not defeated; a statutory power is not taken away nor criminal charges affected, by such repeal and re-enactment of the law on which they respectively depend." Same author sec. 134. See also on these same doctrines, United Hebrew Ben. Ass'n v. Benshimol, 130 Mass. 325; Wright v. Oakley, 5 Met. 400 (Mass.); Steamship Co. v. Joliffe, 2 Wall. (U. S.) 450; Moore v. Township of Kenockee, 75 Mich. 332; State v. Gumber, 37 Wis. 298; State v. Baldwin, 45 Conn. 134; Middleton v. N. J. W. L. R. R. Co., 26 N. J. Eq. 269; Mitchell v. Halsey, 15 Wendell (N. Y.) 241; Capron v. Strout, 11 Nev. 304; The State v. Wiltz, 11 La. 439.

It is also laid down as a correct rule of interpretation of a statute that "where the intention as to being retrospective is doubtful the statute will be construed as prospective only; but where the language clearly indicates that it was intended to have a retrospective effect it will be so applied." Sutherland on Stat. Con., secs. 463 and 464.

There are some significant features of the new act of 1905 to be considered in arriving at the intention of the legislature, that are found in the parts of the old statute that are not carried into the new statute

and therefore repealed intentionally. The phrases "or to continue business, if already established," and "now or hereafter doing business within this state," found in the beginning parts of paragraphs 67b and 67c of the act of 1897, not having been carried into the new statute nor words equivalent thereto, would seem to clearly indicate that those foreign corporations already licensed under the old law were not intended to be affected by the new act so as to compel them to requalify. If these phrases had been included in the new statute, no doubt would or could exist as to the new statute being retrospective, as was the statute of 1897. Hence, the intentional omission of these very words that would remove all possible doubts as to the application of the statute must necessarily be considered as some indication that paragraphs 67c and 67d of the new act are only to have a prospective operation and, therefore, not applicable to the plaintiff corporation which qualified under the old act. Several of the other sections of this statute, however, are clearly intended to apply to all foreign corporations, including the plaintiff in this case; and, while the question in this case to be decided is by no means free from doubt, yet, I am of the opinion under the rules above laid down that the new act is a mere continuance and modification of the old laws, and that it should be held that the intention of the legislature is that the changes in the new act should operate prospectively; and that the plaintiff having qualified and paid its fees under the old law, should not be held to again qualify and pay fees before it can legally continue to do business in this state. I therefore respectfully dissent from the conclusion reached by the majority of the court.