COURDIA AILENE ASHLEY v. G. THOMAS EISELE

5-4928                                                   445 S. W. 2d 76

Opinion delivered October 6, 1969

*Guy H. Jones* and *Phil Stratton*, for appellant.

*Lester & Shults*, for appellee.

J. FRED JONES, Justice. This appeal by Mrs. Ashley is from a summary judgment in favor of her former attorney, G. Thomas Eisele, and grows out of litigation commenced in the Pulaski County Circuit Court wherein Mrs. Ashley alleged excessive attorney's fee and damage because of wrong legal advice intentionally given her by Mr. Eisele in connection with her property rights in a divorce action.

The divorce action out of which the present litigation arose was concluded in 1964, and the pertinent background facts of that litigation are these: In 1962, Mrs. Ashley employed Mr. Eisele to represent her in a divorce action against her husband. Mr. Eisele filed a petition in chancery court for Mrs. Ashley alleging general indignities as grounds for divorce and praying for the custody of the four minor children; for a determination and award of property rights; for an award of attorney's fee and court costs. Immediately after the petition was filed, Mrs. Ashley also engaged the services of attorney H. B. Stubblefield, who associated with Mr. Eisele and they both represented Mrs. Ashley throughout the litigation. Mr. Ashley counterclaimed for a divorce and alleged adultery as one of his grounds.

A property settlement and separation agreement was executed by Mr. and Mrs. Ashley on February 17, 1964, and was approved by the chancellor in a divorce decree entered on Mrs. Ashley's complaint on February 19, 1964. Under the agreement and decree, Mrs. Ashley was paid $15,000 in cash, together with real and personal property valued by her attorneys at $15,000 but valued by Mrs. Ashley at less than half that amount, and Mrs. Ashley was awarded custody of their four minor children. Mrs. Ashley paid her attorneys $6,000 as attorneys' fees and an additional fee of $3,000 was awarded against Mr. Ashley.

On January 31, 1968, Mrs. Ashley filed her complaint against Mr. Eisele in the case at bar alleging that she had only recently learned that Mr. Eisele had wrongfully and intentionally advised her as to her property rights in the divorce action; that she was entitled to a property settlement in the amount of $100,000, rather than the $15,000 awarded to her; that she only agreed to accept the $15,000 in property settlement because of the willful, intentional, wrongful and erroneous legal advice given to her by Mr. Eisele while he represented her and while he knew that there was a conflict between her interest and the interests of other parties with whom Eisele became involved. Mrs. Ashley also alleged that the $6,000 fee charged by her attorneys, and paid by her, was unconscionable, exorbitant and excessive. She prayed judgment for $6,000 paid in attorneys' fees, for $85,000 damages she suffered because of the property settlement and for $25,000 punitive damages. Eisele filed an answer admitting his employment and representation, along with Stubblefield, as alleged in the complaint. He admitted that a written property settlement agreement was entered into between Mr. and Mrs. Ashley and a divorce was granted to Mrs. Ashley. He denied the other allegations.

Interrogatories were directed to, and answered by, Mrs. Ashley. The depositions of Mrs. Ashley, Mr. Ashley and Mrs. Ashley's sister, Mrs. Earline Keltner, were taken and on August 26, 1968, Eisele filed a motion for summary judgment on the pleadings, depositions, answers to interrogatories, and the affidavit of Eisele in support of his motion. On September 5, 1968, the circuit court entered an order setting Eisele's motion for hearing on September 9, 1968, and on the date of hearing Mrs. Ashley filed a response to the motion for summary judgment stating that justiciable issues did exist and that Eisele was not entitled to a summary judgment. No counter-affidavits were filed on behalf of Mrs. Ashley, but at the hearing on the motion her attorney offered her oral testimony in lieu of affidavits. The

trial court refused to hear Mrs. Ashley's oral testimony in lieu of affidavits and on this issue the record recites as follows:

"THE COURT:
Mr. Jones, for the purpose of the record·do you have any affidavits or other type of pleadings that you want to file?

MR. JONES:
We could file an affidavit for the plaintiff but we brought the plaintiff in person so that her testimony could be taken. Now, the plaintiff has a sister in the hospital in Memphis in a critical and terminal state and she has been over there and off in Memphis with this ill sister at the time of serving of the notice and filing of the Motion for Summary Judgment and has not been back very long in the county and is actually under emotional strain and duress at this time.

MR. SHULTS:
For this record this case was filed in February of this year. We served Interrogatories on the plaintiff in March of this year. It took us three and a half months to get these Interrogatories answered. They were only answered when the Court so ordered it. A pre-trial was held on July 29, 1968. Certain things were directed to be done within ten days by the plaintiff. They were not, in fact, done until twenty-three days after that date. As soon as those things were done and all witnesses were listed we prepared and filed our Motion for Summary Judgment. The case has been set for trial since April 2nd of this year. There has been ample time for the plaintiff to take whatever depositions she may have desired to take.

THE COURT:
When is the case set for trial?

MR. SHULTS:
Sir?

THE COURT:
When is the case set for trial?

MR. SHULTS:
This Thursday, September 12th. It is necessary that
the Motion for Summary Judgment be disposed of.
It has been pending for more than two weeks and
the only response received was that received today.
We think the motion is timely filed. The delivery of
it having been presented no earlier was no fault at
all on the defendant. The defendant presented it as
soon as discovery was completed on his part. We
ask the Court to rule on it today and we earnestly
ask that the motion be granted.

MR. JONES:
Due to the fact that the notice of this hearing, I
believe dated August (September) 5th, I believe my
letter bears that date that the hearing would be to-
day and I assume that I got that Friday or Satur-
day. I know that upon receipt of it I attempted to
get ahold of Mrs. Ashley. We did not state that the
proper time was not complied with—the ten days
notice. Our statement was that the notice of the
hearing was rather a brief one and for the purpose
of preparing any depositions and for that reason
we have the plaintiff here in person for the taking
of any testimony that the Court feels should be tak-
en under oath rather than by affidavit.

MR. SHULTS:
Her testimony is in the record by deposition which
we feel is the only appropriate way."

The trial court granted Eisele's motion for sum-
mary judgment and Mrs. Ashley relies on the following
points for reversal:

"The trial court erred in refusing to allow appellant to testify at hearing on appellee's motion for summary judgment.

The trial court erred in granting defendant below summary judgment upon a verified complaint alleging willful, deliberate and intentional misconduct on the part of appellee as appellant's attorney."

We have examined the entire record and we have had no difficulty at all in arriving at the conclusion that the trial court was correct in finding that there was no justiciable issue presented as to Eisele willfully, intentionally, wrongfully or erroneously giving Mrs. Ashley bad legal advice. We also agree that there was no justiciable issue that Eisele acted in bad faith or misinformed, or misrepresented to Mrs. Ashley her rights under the laws of Arkansas, or that Eisele had any conflict of interests in his representation of Mrs. Ashley. As a matter of fact the record is to the contrary.

Both parties were represented by competent counsel in the divorce action, and it is obvious from the record that the attorneys on both sides were thoroughly familiar with the provision of Ark. Stat. Ann. § 34-1214 (Repl. 1962), which provides as follows:

"In every final judgment for divorce from the bonds of matrimony granted to the husband, an order shall be made that each party be restored to all property not disposed of at the commencement of the action, which either party obtained from or through the other during the marriage and in consideration or by reason thereof; and where the divorce is granted to the wife the court shall make an order that each party be restored to all property not disposed of at the commencement of the action, which either party obtained from or through the other during the marriage and in consideration or by reason thereof; and the wife so granted a di-

vorce against the husband, . . . shall be entitled to one-third [1/3] of the husband's personal property absolutely, and one-third [1/3] of all the lands whereof her husband was seized of an estate of inheritance at any time during the marriage for her life, unless the same shall have been relinquished by her in legal form. . .''

In the light of this statute and with the issues joined on petition and counter petition, the record is clear that Mrs. Ashley's attorneys settled down to negotiate with Mr. Ashley's attorneys for an agreed property settlement on the best terms possible. They threatened to prove assets and income far in excess of that reported for income tax purposes and Mr. Ashley's attorneys countered all proposals with the assurance that Mr. Ashley had ample grounds for a divorce on his counterclaim, and that they would have no difficulty in presenting proof which would entitle him to a divorce.

The attorneys were still deadlocked in their negotiations on January 5, 1967, when Mrs. Ashley, according to her own deposition, was arrested, along with a nineteen year old young man, while both of them were naked in the young man's automobile parked on a dead-end road off No. 10 Highway. She contended that she had been drugged and ''framed'' and there are no indications that her attorneys did not believe her. There are indications, however, that her attorneys were not so sure that the chancellor would believe her, for on January 30, 1964, Mr. Eisele wrote to Mrs. Ashley, in part, as follows:

''Mr. Stubblefield and I have reviewed your case thoroughly, and we have concluded that you should settle same prior to the giving of your deposition at the best offer obtainable. By this we mean we should even accept the offer previously made if we can do no better. In other words, our advice is that

we should take what we can get because we feel that it is very likely, in fact almost certain, that if the case is tried, you will get nothing either by way of alimony or property from Mr. Ashley. By this we do not mean to suggest that your fault is greater than that of your husband, but rather the circumstances and the anticipated testimony simply weigh too heavily against you. * * * ''

Mrs. Ashley was represented by two attorneys, but Mr. Eisele is the only defendant in this lawsuit. Both attorneys advised Mrs. Ashley as to her rights under the laws of Arkansas, and it is obvious that her property rights under the record in this case, would depend upon whether she was granted a divorce on her alleged grounds or Mr. Ashley was granted a divorce on his own allegations. From the uncontroverted facts in the record before us, including Mrs. Ashley's own admissions on interrogatories and her testimony on deposition, it would appear that Mrs. Ashley's attorneys may have given her very good advice in the property settlement they recommended, and certainly there is no evidence that Mr. Eisele gave her bad advivce, or that she sustained any damage by following the advice given.

In Mr. Eisele's affidavit for summary judgment he stated that he had not even met the parties involved in the alleged conflict of interest at the time his representation of Mrs. Ashley was concluded and this statement is not controverted.

The alleged excessiveness of the attorneys' fee gives us more difficulty. The complaint alleges that the attorneys' fee of $6,000 was excessive and unconscionable. Mrs. Ashley testified on her deposition as follows:

"Q. Do you recall whether at the time you employed Mr. Eisele you had any discussion with him about fees to be charged in this case?

A. Yes, I do.

Q. What was that discussion?

A. That the Court would determine the fee.

Q. Did he tell you at that time that he would charge you an additional fee other than that which the Court allowed?

A. No, not at that time.

Q. At the time you employed Mr. Stubblefield did you discuss the fee arrangement with him?

A. Yes.

Q. What did—

A. With Mr. Eisele and Mr. Stubblefield.

Q. What did they advise you?

A. The fee would be thirty percent of the property other than the home and child support and then, of course, whatever the Court awarded that would be subtracted from what I would pay them.

Q. Were you agreeable with that fee arrangement?

A. I didn't have much choice.

* * *

Q. I ask you again, did you agree at that time on the fee arrangement?

A. Yes, I did.

Q. What was the total fee paid to Mr. Eisele and Mr. Stubblefield in this case?

A. $9,000.00.

Q. How did they arrive at that figure?

A. I haven't the slightest idea.

Q. How much of the fee was paid by Mr. Ashley?

A. $3,000.00.

Q. Was the balance of the $6,000.00 paid by you?

A. Yes.

Q. You have alleged in the complaint that the fee was exorbitant how did you arrive at that conclusion?

A. Mr. Lester, I was in a state of shock for months, and I think anyone would know that I was charged a fee in excess of what it should have been."

This testimony is not controverted but is more or less confirmed by Mr. Eisele in his affidavit for summary judgment, as follows:

"In one of the first meetings between Mrs. Ashley, Mr. Stubblefield and me, Mr. Stubblefield pointed out that we could not be expected to represent her solely upon the basis of such legal fees as might be awarded by the court. We pointed out that in a proceeding of this type more work was required of the attorneys, when compared to the results anticipated, than in other types of legal proceedings. At that time Mrs. Ashley urged us to seek a quick settlement, but Mr. Stubblefield pointed out that if this failed and if the case then required the effort which we expected, Mrs. Ashley would be expected to pay

a fee representing somewhere between one-fourth and one-third of her recovery, although she would be given credit for any fee allowed by the court."

Mr. Stubblefield was one of Mrs. Ashley's attorneys and shared in charging the fee as well as collecting it. He is not a party to this lawsuit, but his affidavit that the fee was reasonable does not take that item out of the realm of justiciable controversy.

The appellee argues on appeal that the statute of limitations, Ark. Stat. Ann. § 37-206 (Repl. 1962), bars the causes of action set out in the complaint and that summary judgment is appropriate under our decision in *Norwood* v. *Allen,* 240 Ark. 232, 398 S. W. 2d 684. The statute of limitations was specifically pleaded in *Norwood* and was not pleaded at all in the case at bar.

In the early case of *Western Union Telegraph Co.* v. *State,* 82 Ark. 309, 101 S. W. 748, this court said:

"The general rule established by the decisions of this and most other courts is that in all civil actions the statute must be pleaded in some way, otherwise it is deemed to have been waived as a defense. The Encyclopedia of Pleading and Practice (vol. 13, p. 282) states the rule of practice to be that in actions to recover penalties either a plea of the general issue or a special plea of the statute of limitations is sufficient to render it available as a defense. This statement is sustained by adjudged cases. *Moore* v. *Smith,* 5 Me. 490; *Frohock* v. *Pattee,* 38 Me. 103; *Pike* v. *Jenkins,* 12 N. H. 255; *Gebhart* v. *Adams,* 23 Ill. 397."

The statute of limitations is not mentioned in the pleadings in the case at bar, but was only first mentioned in Eisele's memorandum in support of motion for summary judgment. It appears from that memorandum that if the statute of limitations was relied on at

all, it was expressly waived as to part of the cause of action in the following language:

"The defendant does not have to and does not rely on the statute of limitations in regard to this claim of deliberate giving of wrong advice."

The nearest Mr. Eisele comes to pleading the statute of limitations as to the claim on attorneys' fee is also contained in his memorandum in support of motion for summary judgment in the following language:

"The cause of action asking for a recovery by Mrs. Ashley of the legal fees she paid to Mr. Eisele and Mr. Stubblefield was filed almost four years after the payment was made and the employment of Messrs. Stubblefield and Eisele terminated. This cause of action, based on either a contract or unjust enrichment theory, was filed more than three years after it accrued and is therefore barred by Ark. Stats. 37-206. Summary judgment for the defendant on this cause is therefore appropriate and just. *Norwood* v. *Allen,* 240 Ark. 232, 398 S. W. 2d 684."

It would appear from the face of the record that the statute of limitations might have been a good defense had it been pleaded and nothing offered in the way of evidence that the statute had been tolled or its operation suspended. If Eisele did not rely on the statute of limitations, a justiciable issue was presented on the attorney fee issue. If the statute was relied on, it was not pleaded and Mrs. Ashley had a right to assume that it was waived. If the statute had been pleaded and relied on in support of a motion for summary judgment, then Mrs. Ashley would have had a right to plead in controversion any facts or circumstances which might have tolled the statute of limitations.

The appellant poses two questions under her first point:

"May a party offer testimony at a hearing on a

motion for summary judgment in lieu of a counter-affidavit?

Under the facts in this case was it an abuse of discretion by the trial court to refuse to allow Appellant to testify in opposition to a motion for summary judgment in lieu of counter-affidavits?''

We do not answer the first question as a hard and fast rule of law to be applied in all cases, but we answer the second question in the negative and that also disposes of the first question under the facts in this case. Our summary judgment statute, Ark. Stat. Ann. §§ 29-201—29-211 (Repl. 1962), is an adoption of federal rule of civil procedure, Rule No. 56, and its provisions will not be set out again here. The object of procedure for summary judgment is not to determine an issue, but to determine whether there is an issue to be tried (*Byrnes* v. *Mutual Life Ins. Co. of N. Y.*, 217 F. 2d 497). One of the objects of the summary judgment is to dispose of litigation on motion when the facts are not disputed and the law can be applied to them, thus avoiding the expense and time of hearing witnesses at a formal trial. Consequently, to permit oral testimony in lieu of the more convenient affidavit would tend to defeat one of the purposes of summary judgment.

The trial court did not abuse its discretion in refusing to hear the testimony of Mrs. Ashley in lieu of her affidavit, because Mrs. Ashley had already verified her complaint, answered interrogatories and given her deposition under oath. All this was in the record and was the basis for the motion in the first place.

In 49 C. J. S., § 225, beginning on page 420 is found the following:

"The general requirements of an affidavit filed in opposition to a motion for summary judgment are no different from those necessary in support of a summary judgment. * * *''

In *MacLean* v. *Parkwood,* 247 F. Supp. 188, the court did permit oral testimony in lieu of affidavit in support of a motion for summary judgment, but in doing so the court said:

"Parkwood attached certain depositions to its motion and at the hearing offered testimony of witnesses and documentary evidence tending to show ownership of the land in question. The Court permitted Parkwood's counsel to proceed in this manner, in the interest of saving time and on the basis that testimony is as reliable as affidavits. However, the Court desires to note at this time that it is preferable on summary judgment motions to proceed by way of affidavit. The summary judgment procedure is not to be used as preliminary trial, or demonstration of 'conclusive proof' of certain facts. Rather it is a mechanism for showing that as to certain facts there is *no* genuine dispute and that on these facts the moving party is entitled to judgment as a matter of law. The Court's role in summary judgment proceedings is not to resolve issues of fact, but merely to pinpoint those facts which are not at issue. Presentation of affidavits, rather than testimony, would have permitted the Court to perform its task more efficiently."

Mrs. Ashley was not required to file affidavits at all under the statute and it was not her failure to do so that entitled Eisele to the summary judgment. It was the lack of a justiciable issue on the facts, including those established by the affidavits *that were filed* that entitled Eisele to the summary judgment. The only effect of Mrs. Ashley's failure to file counter-affidavits was to leave the *facts* set out in Mr. Eisele's affidavit uncontroverted, and to be accepted as true, for the purposes of his motion.

The office of counter-affidavits in summary judgment proceeding has been recited in many cases as set

out in the annotations in U. S. C. A., Title 28. Rule 56, p. 366, some of which are as follows:

> "Failure of opposing party to file counter-affidavits does not necessarily mean that party moving for summary judgment is entitled to judgment. *Rohlfing* v. *Cat's Paw Rubber Co.,* D. C. Ill. 1952, 17 F. R. D. 426. Failure of resisting party on motion for summary judgment to file counter affidavits does not entitle movant to summary judgment if there otherwise exists in the record an issue of material fact to be tried. *Dulansky* v. *Iowa-Illinois Gas & Elec. Co.,* D. C. Iowa 1950, 10 F. R. D. 566.
>
> If no counter affidavits are filed in resistance to a motion for summary judgment, the facts contained in affidavit in support of such motion must be taken as true. Id.
>
> On defendants' motion for summary judgment, in absence of counter affidavits denying facts in defendants' affidavits, court was required to accept such facts as undisputed and true. *Seward* v. *Nissen,* D. C. Del. 1942, 2 F. R. D. 545.
>
> On defendant's motion for summary judgment in unfair competition case, claim that plaintiffs were not given enough time to gather and submit affidavits was properly denied in trial court's discretion, where plaintiffs had reasonably full opportunity to produce affidavits and the further affidavits sought were merely cumulative. *California Apparel Creators* v. *Wieder of Cal..* C. C. A. N. Y. 1947, 162 F. 2d 893, 174 A. L. R. 481, certiorari denied 68 S. Ct. 156, 332 U. S. 816, 92 L. Ed. 393. Where averments of complaint were refuted by plaintiff's own deposition, no issue as to any material fact remained and summary judgment was properly granted. *Bennett* v. *Flanigon,* C. A. Ill. 1955, 220 F. 2d 799.

Party opposing motion for summary judgment must be diligent in countering motion and mere general allegations which do not reveal detailed and precise facts will not prevent award of summary judgment. *Liberty Leasing Co. v. Hillsum Sales Corp.*, C. A. Fla. 1967, 380 F. 2d 1013.

Only facts which are such as to be admissible in evidence, facts based on personal knowledge, may be set forth in affidavit in opposition to motion for summary judgment. *Feldman v. Birger*, D. C. Mass. 1962, 205 F. Supp. 87."

It is true, as argued by Mrs. Ashley under her second point, that her verified complaint alleges that Mr. Eisele willfully, intentionally and deliberately gave erroneous legal advice to Mrs. Ashley, but this allegation is of little assistance to her on motion for summary judgment for the simple reason that facts upon which the allegation is predicated and as brought out and established by answers to interrogatories, depositions, and affidavits, are not in dispute. They simply do not sustain the allegation that the legal advice given Mrs. Ashley was erroneous or that Mrs. Ashley suffered any damages because she acted upon it.

The summary judgment of the trial court is affirmed except as it relates to the alleged excessiveness of the attorneys' fee. This cause is remanded to the trial court for further proceedings on that issue consistent with this opinion. It may well be that the issue can be determined upon the basis of the defense of limitations if it be found that this defense has not been waived or that it was not tolled during the period prior to the filing of this action. If not waived, Mrs. Ashley should be given an opportunity to show facts which would toll the statute.

Affirmed in part and remanded.

BYRD, J., disqualified.

HOLT. J., not participating.