## Hatch *v.* Coddington.

1. A general power conferred upon the agent of a railroad company to borrow money on its behalf, in such sums, for such length of time, and at such a rate of interest as he may think proper, and to purchase iron rails, locomotives, machinery, &c., on such terms as he may deem advisable, and, in order so to do, to make, execute, and deliver obligations, bills of exchange, contracts, and agreements of the company, includes authority to give to the lender of the money borrowed, or to the seller of the things purchased, the ordinary securities.

2. Persons who deal with an agent before notice of the recall of his powers are not affected by the recall.

3. Upon consideration of the written evidence in this case, the court holds, 1. That the contract entered into April 21, 1859, between the defendant and the Minnesota and Pacific Railroad Company, by Edmund Rice, its president, was authorized by the resolution of the board of directors of that company, passed July 13, 1858. 2. That the resolution of said board, passed May 13, 1859, was an acknowledgment that the contract was a binding obligation upon the company.

Error to the Circuit Court of the United States for the Southern District of New York.

This action was trover by Edwin A. C. Hatch against Thomas B. Coddington for the conversion of forty-five Minnesota State bonds. Each party claimed them under the Minnesota and Pacific Railroad Company, to whom they had, on the 3d of February, 1859, been issued by the State, under a provision of its Constitution authorizing the issue of such bonds for the purpose of expediting the construction of certain railroads.

The plaintiff claimed title by the following transfers, both dated May 13, 1859:—

" For value received, we, the Minnesota and Pacific Railroad Company, hereby sell, assign, transfer, and set over to Selah Chamberlain and his assigns forty-five bonds for $1,000 each, issued by the State of Minnesota to us, and now in the hands of Thomas B. Coddington & Co., of the city of New York, and authorize and empower him to have and receive the same.

" In witness whereof, we have caused these presents to be signed, by our president, Edmund Rice, and attested by our secretary, James W. Taylor, and our corporate seal to be thereto affixed, this thirteenth day of May, in the year 1859.

[SEAL.]                                " EDMUND RICE, *President.*

" Attest :      JAMES W. TAYLOR, *Secretary.*"

" For value received, I hereby assign, transfer, and set over unto Edwin A. C. Hatch, the forty-five Minnesota State railroad bonds of the denomination of $1,000 each, now in the hands of T. B. Coddington & Co., of the city of New York, and all my right, title, and interest therein, being the bonds issued to the Minnesota and Pacific Railroad Company, and transferred by said company to me.

" S. CHAMBERLAIN."

The bonds had been deposited with Thomas B. Coddington & Co., the defendant's firm, as security for the obligations of a contract which they made with the company on the 21st of April, 1859.

The plaintiff alleged that this contract had been executed by Edmund Rice without authority, and only conditionally delivered, and that it consequently never took effect.

At the date of its execution, said Rice was president, Rensselaer R. Nelson was vice-president, and William H. Newton and said Hatch were directors of the company.

The contract was negotiated by Newton in concert with Rice, both being at the time in New York. As evidence of his authority to make the contract, Rice gave to Newton, to hand to T. B. Coddington & Co., the charter of the company, copies of legislative acts and of the provision of the constitution authorizing the bonds, and also of the following resolution of the board of directors of the company, passed July 13, 1858 : —

" Whereas the interests of the Minnesota and Pacific Railroad Company require that no default in the performance of the conditions under which the credit of the State of Minnesota has been loaned to this company shall occur, and that means shall be promptly provided, with the aid of said loan of State credit, to construct one hundred miles of road at an early day, thereby vesting in the company the right to sell, unconditionally, three hundred and eighty-four thousand acres of land : Therefore,

" *Resolved,* That Edmund Rice, president of the Minnesota and
Pacific Railroad Company, or any agent or agents duly appointed
by him in writing to execute the trusts and powers conferred by this
resolution, be, and are hereby, authorized and empowered, in pur-
suance of sect. 21 of the charter, to sell, loan, pledge, hypothecate,
or otherwise dispose of the first-mortgage bonds of the company
in conformity to the provisions of the trust mortgage deed of said
company at par, or any price less than par, and for such sum or
sums as to the said Rice or agents appointed by him shall appear
most for the interest of the company; and the said president, or
such agent or agents as he may appoint, is and are hereby author-
ized to borrow such sum or sums of money for such length of time
and for such rate of interest as to him or such agent or agents may
seem proper, for or on behalf of the company, and also to purchase
such quantity of iron rails, locomotives, cars, tenders, rolling-stock,
and machinery for such road, and upon such terms as he or such
agent or agents may deem advisable, and to make, execute, and
deliver, in the name and on behalf of said company, such obligations,
bills of exchange, contracts, and agreements, in writing, as will
enable him or such agent or agents to carry out the powers and
authority above conferred upon him or them, making monthly
reports to the board of his acts in the premises; all which acts there-
under done are hereby ratified and confirmed : *Provided,* that the
whole amount of obligations to be incurred on behalf of the com-
pany under this resolution shall not exceed the sum of $1,750,000.

" A true copy from the minutes.

[L. S.]                " Attest:      JAMES W. TAYLOR, *Secretary.*"

The plaintiff also contended that, if originally sufficient, the
powers given by the resolution were withdrawn by the follow-
ing resolutions of the executive committee of the directors,
passed Jan. 23 and Feb. 3, 1859 : —

" ST. PAUL, Jan. 23, 1859.

" At a meeting of the executive committee.

" On motion,

" *Resolved,* That R. R. Nelson, acting president of the Minnesota
and Pacific Railroad Company, be authorized to make application
and receive from the governor $100,000 of the State bonds, which
said company are now entitled to.

" *Resolved,* That the acting president be instructed to appropriate
the $100,000 of the State bonds which the Minnesota and Pacific

Railroad Company are now entitled to from the State to pay the actual current expenses which have accrued up to date, and which may hereafter accrue, including salaries of officers, interest of the first-mortgage bonds of the company already disposed of, and other incidental expenses.

"R. R. NELSON, *Chairman.*
"WM. H. NEWTON, *Secretary.*"

"ST. PAUL, Feb. 3, 1859.

"At a meeting of the executive committee.

"On motion,

"*Resolved,* That R. R. Nelson, as acting president of the Minnesota and Pacific Railroad Company, be, and is hereby, authorized to sell all or any portion of the State bonds in his hands at such rates as he may deem to the best interests of the company, and apply the proceeds as heretofore directed by resolution of the executive committee, and any or all of said proceeds be placed to the credit of R. R. Nelson, the vice-president of this company, for the benefit of said company, as he may direct.

"R. R. NELSON, *Chairman.*
"WM. H. NEWTON, *Secretary.*"

There was no evidence that these resolutions were ever brought home to the defendant. The evidence as to the absolute delivery of the contract was conflicting, and took a wide range. The contract provided for a purchase and sale of railroad iron, and an advance by T. B. Coddington & Co. of $16,000 to the company, on its notes. The company was to deposit as security eighty-five bonds; but it had in New York, at the time the contract was executed, only the forty-five in question.

The contract was made in duplicate, and signed at New York on the part of the company by Rice, the president. At the same time were signed three notes for the $16,000. Rice received one of the contracts, and a letter of credit authorizing drafts for the $16,000; the other contract and the notes were delivered to T. B. Coddington & Co. The bonds were delivered with the following letter: —

"NEW YORK, 21st April, 1859.
"Messrs. T. B. CODDINGTON & Co.:

. "DEAR SIRS, — In conformity with an agreement made with you this day, I hand you, by Mr. William H. Newton, $45,000 of Min-

nesota State bonds, and will send you, without delay; a further amount of $40,000 of like description of State bonds, as collateral and for negotiations, as per same agreement.

"I also hand you our three notes, bearing this date, at six months, with interest at seven per cent, — one for $6,000 and two $5,000 each, in all $16,000, against which you will please grant a letter of credit for $16,000, in favor of William H. Newton, stipulating that, on your receiving the remaining $40,000 of bonds above referred to, you will accept drafts drawn by him at one day's sight on you.

"I am, yours respectfully,

"EDMUND RICE,

"Pres. Minn. & Pac. R. R. Co."

Rice testified that he gave Newton the papers to be left with T. B. Coddington & Co., but not to take effect unless ratified by the board of directors, nor if Nelson had disposed of the forty bonds then supposed to be in his hands.

There was no evidence that any condition affecting the delivery was brought home to the defendant or his firm. He testified that the papers were exchanged absolutely, he being represented by his clerk; and Newton testified that there was no condition of any kind in reference to the delivery.

The contract, the three notes, the letter of credit, and the letter undertaking to send forty more bonds were all executed April 21, 1859. Rice and Newton at once telegraphed to Nelson, at St. Paul, "Interest on State bonds provided for, and a thousand tons of iron purchased," and started for that place the next day, where they arrived on or before the 29th of April. On that day and the next, and on the 6th, 9th, 10th, 11th, 12th, and 13th of May, they attended meetings of the board.

On the 30th of April Rice wrote to defendant the following letter, which was the first communication he sent after leaving New York for St. Paul: —

"OFFICE OF THE MINNESOTA & PACIFIC R. R. Co.,

"ST. PAUL, April 30, 1869.

"GENTLEMEN, — I found upon my arrival here that the acting president of this company had disposed of the forty Minnesota State bonds, which were to have been forwarded to you by the terms of

the contract made between us in New York. You will perceive, therefore, that it is impossible for the company to comply with its undertaking. Some action of the board of directors will be had upon the subject, of which I shall take pleasure in advising you at the earliest moment.

> "Very respectfully, your obedient servant,
>
> "Edmund Rice,
> "*Pres. Minn. & Pac. R. R. Co.*"

"T. B. Coddington & Co., New York."

The proceedings of the board do not show any action adverse to the contract as having been unauthorized, or as not consummated.

On the 14th of May, 1859, the following communication was addressed to Coddington & Co. : —

> "Office of the Minnesota & Pacific R. R. Co.
> "St. Paul, May 14, 1859.

"Messrs. T. B. Coddington & Co. :

"Gents, — You will please deliver to Messrs. Rice or William H. Newton forty-five Minnesota State seven per cent bonds, of the denomination of $1,000 each, now in your hands, issued by the State to the Minnesota and Pacific Railroad Company, said bonds belonging to the railroad company.

> "Very respectfully, yours,
>
> "R. R. Nelson,
> "*Acting Pres. M. & Pac. R. R. Co.*"

On the 17th, Rice wrote them, enclosing a copy of the following resolution of the board : —

"Secretary's Office, Minnesota & Pacific R. R. Co.

"At a meeting of the board of directors of the Minnesota and Pacific Railroad Company, held in St. Paul, May 13, 1859, the following resolution was unanimously adopted : —

"'Whereas circumstances have arisen in the affairs of this company whereby it has become impossible to comply with the terms of the contract made by the president thereof, on behalf of the company, with T. B. Coddington & Co., of the city of New York, under date of April 21, 1859 : Therefore,

"'*Resolved,* That William H. Newton, Esq., be, and he is hereby, authorized to proceed to New York and procure a surrender of said contract and a return of the forty-five Minnesota State bonds

ansferred to Messrs. T. B. Coddington & Co., upon such equitable terms as may be agreed upon.'

[CORPORATE SEAL.]                    " T. M. METCALF, *Secretary.*"

These papers and some subsequent correspondence were, without objection, received in evidence as bearing on the disputed question whether the delivery was in fact conditional, and also as showing, if it was, a ratification of the president's acts, and a waiver of the condition.

The plaintiff requested the court to charge as matter of law that there had been no ratification. The court refused so to charge, but left the evidence of the conduct of the company and its officers to the jury, with the instruction, however, requested by the plaintiff, that " to constitute ratification there must have been a direct sanction of the contract by the board of directors, or conduct, or acts, or a resolution or resolutions inconsistent with any other supposition than an assent to such contract by said board."

The court also left the evidence of the conduct of the company and its officers, after the date of the contract, to the jury, as bearing "upon the question whether either of the conditions . . . were impressed upon the contract, so as to make the delivery conditional and dependent upon the fulfilment of the conditions . . . as having a proper bearing as evidence upon the fact whether the condition was imposed."

To this instruction the plaintiff excepted.

The court also charged the jury that, under the resolution of July 13, 1858, Rice had authority to make the contract of April 21, 1859, and that that authority was not withdrawn by the resolutions of Jan. 23 and Feb. 3, 1859; nor did those resolutions derogate, detract from, or in any manner impair the force and efficiency of said resolution of July 13, 1858. The plaintiff excepted to this charge, and assigns it for error here.

There was a verdict for the defendant; and, judgment having been rendered thereon, the plaintiff removed the case here. The assignments of error not passed upon by the court are omitted.

*Mr. E. W. Stoughton* for the plaintiff in error.

*Mr. William M. Evarts* and *Mr. S. P. Nash, contra.*

MR. JUSTICE STRONG delivered the opinion of the court.

We concur with the Circuit Court in the opinion that Mr. Rice was authorized by the resolution of the board of directors of July 13, 1858, to make the contract with the defendant, which it is claimed he made on the 21st of April, 1859. That resolution was very broad. As appears from its preamble, it aimed to provide, promptly, means for the construction of one hundred miles of the company's railroad, and to guard against default in the performance of the conditions upon which the credit of the State had been loaned; and these aims were intended to be secured, in part, with the aid of the State loan, that is, with the aid of the State bonds delivered to the company. The preamble, having avowed such purposes, was followed by a resolution which expressly conferred upon Mr. Rice, the president of the company, several distinct powers. The first was to sell or hypothecate the first-mortgage bonds of the company (thereafter to be issued) for such sum or sums as he might think for the interest of the company. A second power given was to borrow money on behalf of the company in such sums, for such length of time, and at such a rate of interest as he might think proper. And, thirdly, he was empowered to purchase iron rails, locomotives, machinery, &c., for the company, on such terms as he might deem advisable; and, to enable him to carry out these powers and authority, he was empowered to make, execute, and deliver obligations, bills of exchange, contracts, and agreements of the company. It is difficult to see what words would have been more comprehensive for the grant of power to do every thing which, in the judgment of Mr. Rice, was necessary or advisable, either for borrowing money or purchasing iron for the company. A general power to borrow money includes authority to give to the lender the ordinary securities for the sum borrowed. Among these are bonds, notes, or acceptances, and collaterals. But the resolution went further. It conferred power to make contracts and agreements, such as would enable Mr. Rice to borrow money or to make purchases of railroad iron; not merely contracts of purchase, but contracts and agreements that might enable him to effect a purchase. An engagement to give collaterals as a security for money borrowed, or for the payment of a

debt incurred for iron, is surely within the limits of such a power. This disposes of the first question raised by the assignments of error. We hold that there is nothing in the agreement of April 21, 1859, transgressive of the power with which the president of the company was clothed by the resolution of the directors.

We are also of opinion that the power thus conferred was not revoked or withdrawn by the subsequent resolutions of Jan. 23 and Feb. 3, 1859. They made no reference to the action of the board in 1858, or to any powers conferred by that action upon the president of the company. Undoubtedly, they conferred authority upon Mr. Nelson, acting as president of the company in the absence of the president, to dispose of the bonds; but such authority was not inconsistent with the concurrent existence of the like power in Rice. Two persons may be employed separately to negotiate the sale or hypothecation of bonds, and either may thus dispose of them. If a disposition be made by one, of course the other will be unable to exercise the power with which he was clothed; but, until a sale or hypothecation is made, either may make it. Moreover, in this case there is no evidence that knowledge of the resolutions of Jan. 23 and Feb. 3, 1859, was ever communicated or intended to be communicated to the defendant. The authority given to Mr. Rice was exhibited to him. On its face it was a continuing authority, on which he had a right to rely until notified of its revocation. Persons who deal with an agent before notice of the recall of his powers are not affected by the recall. 2 Kent, Com. 644, note; *Fellows v. Steamboat Company*, 38 Conn. 197; *Tier v. Sampson*, 35 Vt. 179; *Morgan v. Stell*, 5 Binn. (Pa.) 305. It follows, therefore, very plainly there was no error in the refusal of the circuit judge to instruct the jury, that, if the resolution of July 13, 1858, conferred upon Mr. Rice authority to make the contract, the authority was withdrawn by the resolutions of Jan. 23 and Feb. 3, 1859.

At the trial in the court below there was some evidence that the contract set up as a defence by the defendant was not unconditionally delivered. The plaintiff alleged that when it left the hands of Mr. Rice, on its way to the defendant, after his signature, two conditions accompanied it. One was that it should not be

binding, and that the delivery of the bonds should be inopera-
tive, unless the board of directors of the company, after being
advised thereof, should approve, ratify, and confirm it.  The
other condition alleged was, that if forty of the bonds, making
up, with the forty-five deposited with the defendant, the eighty-
five called for by the contract, had been disposed of at St. Paul
by the proper officer of the company who had them in charge,
the contract should not be binding.  Whether such conditions
had been imposed was a question of fact properly submitted to
the jury, with the instruction that, if they had been, the contract
was not binding unless the company afterwards ratified and
adopted it.  It therefore became a material inquiry in one
aspect of the case whether there had been such an adoption or
ratification ; and the defendant asked the court to instruct the
jury that there had been no ratification by the railroad company,
and especially that a certain resolution of the company, adopted
May 13, 1859, and communicated to the defendant, was not a
ratification.  The court declined to give such instructions, and,
we think, properly.  We think the resolution referred to was
a plain acknowledgment that the contract made by Mr. Rice
with the defendant was binding upon the company, and, as it
was communicated to the defendant, it was notice to him that
the company acknowledged its obligation.  In the resolution
and its preamble there is nothing which denies that the contract
to which it refers had been made, or asserts that no obligation had
been assumed.  On the contrary, all its language is appropriate
to a contract perfected.  It is an admission that the company
had confirmed and accepted it.  It speaks of the contract as
made, not merely proposed, and asserts an impossibility to com-
ply with its terms, not of an impossibility to enter into the en-
gagement.  It authorizes Newton to procure a surrender of the
contract and a return of the bonds, which it states had been
transferred to Coddington & Co. upon such terms as might be
agreed upon.  All this is plain recognition of the contract as a
binding obligation, and an assertion of a wish to obtain a re-
lease from it.  To say the least, it is inconsistent with any intent
to treat the contract as imperfect and inoperative.  In view of
it, we think the court was justified in refusing to charge the
jury as requested ; and, if there was error in the mode in which

the question of ratification was submitted, it was error of which the plaintiff cannot complain.

It is unnecessary to notice the other assignment of error, in view of what we have said. *Judgment affirmed.*