MALOCH v. PRYOR.

4-5906 139 S. W. 2d 51

Opinion delivered April 15, 1940.

*McKay, McKay & Anderson,* for appellant.

*A. B. Vaughan* and *Jack Machen,* for appellee.

GRIFFIN SMITH, C. J. The suit was brought March 28, 1938, by appellees—the six children of Ruth Bradley and her husband, J. D. Bradley, the latter having died intestate in 1928 leaving 83 acres of land. Mrs. Bradley occupied the premises as her homestead until October, 1930. At that time the land was purchased by W. H. Maloch who paid $578.19 in cash and assumed a Federal Land Bank mortgage of $1,073. Mrs. Bradley and the children joined in a warranty deed to Maloch. The deed was recorded November 10, 1930.

It is contended there was a contemporaneous parol agreement that the grantors should retain half of the minerals. The deed, as prepared, did not contain this reservation. When it was presented to Mrs. Bradley she is alleged to have remarked to Maloch:—"We have decided we will have to hold half of the mineral rights." Five of the appellees and the husbands of three of them, and a justice of the peace, testified in effect that Maloch's response was that he did not think the minerals would "amount to very much one way or the other; so if you will go ahead and sign the deed, Mr. Morse [the justice of the peace] can write up the mineral deed. Send it to me at Springhill [La.] and I will execute it and send it back."

December 13, 1930, Mrs. Bradley executed to Maloch a quitclaim deed to the same property, in which

she expressly released her rights of homestead and dower.

Maloch denied anything had been said about minerals. He testified that Mrs. Bradley asked him to buy the land; that he offered $20 an acre, and that she replied:—"If I can't get more money I will trade with you." Maloch returned to his home in Louisiana, but three or four weeks later received word from Mrs. Bradley that she had decided to sell. The amount paid in cash was divided equally between Mrs. Bradley and her six children. There is no contention that an inadequate price was paid.

The chancellor found there was an agreement to execute a mineral deed, and that it was a part of the consideration of the sale; and, as expressed in the decree, "Maloch neglected to do so." The decree was for a half interest in the minerals.

This was error. While testimony of nine witnesses supports appellees' contentions, conduct of the claimants negatives the importance they now seek to place upon conversations had more than eight years ago. In the interim there have been extensive oil developments in Columbia county and the land has greatly enhanced in value. Appellees say they did not discover until a year or two before suit was brought that the mineral deed was not with their mother's papers. The fact might have been ascertained before Mrs. Bradley died, or immediately thereafter.

·To permit deeds to be impaired and to have engrafted upon them by parol burdens not expressed in their formal recitals may only be done by evidence so clear and convincing that reasonable minds can have no doubt that intentions of the parties were not fully expressed or that a purpose at variance with the deed's provisions was to have been evidenced by an additional writing.

The action, strictly speaking, was not one to reform the warranty deed. Rather, it was appellees' purpose to procure a decree holding that original intention of all parties was not to sell half of the minerals. Therefore,

in theory, such minerals were severed from the fee and title did not pass. *Prima facie,* however, the deed conveyed both the fee and the minerals, and breach of oral contract to reconvey is gravamen of the cause.

Our conclusion is that if there was such an agreement, appellees' claims were abandoned, and by laches lost. In this view of the issues it is not necessary to discuss limitation or the statute of frauds.

The decree is reversed with directions to dismiss the complaint.