BAUM v. RICE-STIX DRY GOODS COMPANY.

4-6563                                    157 S. W. 2d 767

Opinion delivered January 19, 1942.

[3] Three days after Mr. Harrison died, appellee paid Dr. Johnson $113.75. She says other bills were paid, some before May 11.

582

*A. D. DuLaney,* for appellant.

*John M. Lofton, Jr.,* and *Owens, Ehrman & Mc-Haney,* for appellee.

HOLT, J. Appellee, Rice-Stix Dry Goods Company, sued appellant, Robert Baum, to recover $606.73 alleged to be due on a merchandise account. Appellant defended on the ground that he had not purchased the merchandise in question, owed appellee nothing, and also pleaded the statute of frauds. Upon a trial to a jury, there was a verdict in favor of appellee (plaintiff below) for the amount sued for and judgment rendered accordingly. This appeal followed.

The material facts are that prior to June 10, 1939, appellant owned and operated three mercantile businesses in Greater Little Rock, Arkansas. One was known as United Jewelers, another as R. Baum & Company and the third, which is involved here, was operated as the New York Sales Company. Jack Fine, brother-in-law of appellant, was the manager of appellant's New York Sales Company store, and prior to June 10, 1939, bought goods from appellee on appellant's accounts, which were paid for by appellant. The merchandise with which we are concerned in the instant case was sold by appellee subsequent to June 10, 1939. The evidence tends to show that in most, if not every instance, appellee charged these purchases to appellant and invoiced each shipment to R. Baum & Company with instructions to deliver to the New York Sales Company. Jack Fine placed the orders for the account of R. Baum & Company and in a few instances these orders were mailed on stationery of R. Baum & Company. There was testimony that Jack Fine had no credit with appellee and that appellee would not have extended credit to him personally.

June 10, 1939, appellant sold the assets of the New York Sales Company store to Jack Fine under a bill of sale of that date. It was the contention of appellant on the trial below, and he contends here, that he is not liable for any merchandise purchased for the New York Sales Company subsequent to the sale of this store to Jack Fine on June 10, 1939.

Appellee contends, on the other hand, that appellant having placed Jack Fine in charge of the New York Sales Company as manager, and having bought merchandise through Fine from appellee prior to the sale and having established a line of credit with appellee for this store, appellant remained liable for any merchandise purchased by Fine for the New York Sales Company store subsequent to said sale, or until appellant notified appellee to the contrary.

No rule of law is better settled than that one who recognizes another as his agent cannot escape liability for the agent's acts unless he notifies third persons of the termination of the relationship. Appellant admitted that Jack Fine was manager of the New York Sales Company store prior to June 10, 1939.

Mr. Morris, appellee's salesman, testified that he sold goods to the New York Sales Company store beginning in December, 1938; that Jack Fine did the buying and that the goods were billed to R. Baum & Company; that no notice was given him of the sale of the store to Fine and that there was no difference in the operation of the New York Sales Company store before June 10, 1939, and thereafter.

Oscar Uthoff, appellee's salesman who took the orders for the greater part of the merchandise involved here, testified that Jack Fine placed the orders and that the goods were billed to R. Baum & Company for the New York Sales Company; that he had sold goods to Jack Fine prior to June 10, 1939, for R. Baum & Company in the same manner as goods sold after that date.

J. C. Turner, a truck driver, testified with reference to some of the deliveries of the goods in question, that he first delivered the goods to R. Baum & Company's

store and was then directed by appellant to take them to the New York Sales store.

Stanley F. Hill, appellee's credit man in Arkansas, testified that appellee had shipped all goods to R. Baum & Company, North Little Rock, Arkansas; that appellee had no account with the New York Sales Company; that this was true for the years 1938 and 1939; and that appellee received no notice in 1939, prior to the sales involved here, of any sale of the New York Sales Company store to Fine. Appellant testified that he did give notice, prior to the sales involved here, of his sale of the New York Sales Company store to Fine.

There was other evidence of probative value which we do not deem it necessary to abstract here. It is our view that a case was made for the jury.

As has been indicated, appellant contends that no liability rests upon him for merchandise sold to Fine for the New York Sales Company store after the sale of this store by appellant on June 10, 1939. This court, however, has held against this contention of appellant in the case of *Courtney* v. *G. A. Linaker Company,* 173 Ark. 777, 293 S. W. 723, where the facts are similar in effect to those in the instant case. There the appellant, Mrs. Courtney, had formerly owned a mercantile establishment in McGehee, Arkansas, and purchased goods from appellee. A son of Mrs. Courtney was in charge of the store and purchased goods which were charged to her account. Upon suit being filed against Mrs. Courtney for the amount due for unpaid merchandise, her defense was that she had sold the business to C. A. Courtney and another son, executing a bill of sale to them. Appellee's defense was that it had had no notice of the alleged sale. In passing upon the issue, this court said:

"The case then stands here as if the plaintiff, not being notified of the sale of the store to C. A. Courtney and his brother, and consequently not being notified of the revocation of his authority as the agent of his mother, was justified in acting upon the presumption of its continuance. On its face the agency of C. A. Courtney as the representative of his mother in operating the store

was a continuing authority, on which the plaintiff had a right to rely until its revocation. Persons who deal with an agent before notice of the recall of his powers are not affected by the recall. *Hatch* v. *Coddington*, 24 L. Ed. 339, 95 U. S. 48; *Insurance Co.* v. *McCain*, 96 U. S. 84, 24 L. Ed. 653; *Johnson* v. *Christian*, 128 U. S. 374, 9 S. Ct. 87, 32 L. Ed. 412, 2 C. J., § 650 (3), p. 920, and 21 R. C. L., § 37, p. 860.

"In a note to 41 L. R. A., N. S., at p. 664, it is said that it is settled that the acts of an agent, after his authority has been revoked, bind a principal as against third persons who, in the absence of notice of the revocation of the agent's authority, rely upon its continued existence. It is also said that the cases are practically unanimous on this general rule, and most of them summarily state it as if it were an axiom. Many cases are cited in support of the rule. The cases hold that the duty of the principal to notify third persons of the termination of the agency is of the same character and requires the same degree of certainty as that which the law imposes upon the members of a partnership in the case of dissolution as a measure of protection against liability by reason of the subsequent acts of the former members of the dissolved firm.

"This court is committed to the rule that the retiring members of a dissolved partnership continue liable to creditors who deal with the remaining members upon the faith of its continued existence without notice of its dissolution. *Bluff City Lumber Co.* v. *Bank of Clarksville*, 95 Ark. 1, 128 S. W. 58, and cases cited. . . .

"Under the authorities cited above, after a principal has appointed an agent in a particular business, parties dealing with him in that business have a right to rely upon the continuance of his authority until in some way informed of its revocation." See, also, *Wellford et al.* v. *Dermott Grocery & Commission Co.*, 186 Ark. 1198, 54 S. W. 2d 992.

The rule above announced is supported by the text-writer in volume 2, C. J. S. 1181, where it is said: "As between the principal and third persons, an agency will

end from the time the third person has notice of the cessation of the agent's authority."

Appellant questions the correctness of instructions No. 1 and No. 2 given by the court at the instance of appellee. We think it would serve no useful purpose to embody these instructions in this opinion. It suffices to say that we have carefully examined them and it is our view that they are a correct declaration of the law as applied to the facts here.

Appellant also complains because the trial court permitted appellee to introduce certain testimony and documents relating to sales prior to June 10, 1939. We think, however, that this testimony was clearly admissible as tending to establish Fine's agency prior to June 10, 1939.

On the facts presented, it is our view that the jury was justified in finding, as it must have, that appellant had established Fine as his agent and recognized Fine's authority to act for him in the purchasing of the merchandise in question; that appellant did not notify appellee of the termination of Fine's agency; and that credit was extended to appellant, and not to Fine, on the belief that Fine was appellant's agent and authorized to make the purchases for appellant.

Finding no error, the judgment is affirmed.