W. H. BABBITT *v.* Bill GORDON

5-5799                                          476 S.W. 2d 795

Opinion delivered February 28, 1972

*Spitzberg, Mitchell & Hays;* By: *Beresford L. Church, Jr.,* for appellant.

*Virginia ("Ginger") Atkinson,* for appellee.

FRANK HOLT, Justice. The appellee brought this action against the appellant to enforce payment of a $750 check representing the purchase price of a boat motor and accessories and to recover a $50 charge for modifying appellant's boat transom to fit the motor equipment. By answer the appellant denied the claim alleging that appellee installed the motor on appellant's boat without authority and in a negligent manner by failing to employ adequate and proper bolting devices, as well as failing to warn appellant's 16-year-old son that the motor was not securely installed which resulted in the motor being wrenched free and lost in the Arkansas River one day following the mounting of the motor when the boat and motor were being operated by appellant's son. Appellant counterclaimed for the purchase price of the motor; $140 which he had paid to a diver in an effort to retrieve the motor; and $50 for damages to his boat. The court, sitting as a jury, resolved the issues by awarding judgment against the appellant for the agreed $750 purchase price and dismissed appellant's counterclaim.

For reversal the appellant asserts that the trial court erred in holding that the appellee was "merely the seller of an engine," and that the loss of the motor was due to the negligence of appellant's minor son. Further, that if appellant's son were negligent, it was not imputable to appellant. Of course it is well settled that on appeal we review in the light most favorable to the appellee, the evidence and all reasonable inferences deducible therefrom and must affirm if there is any substantial evidence to support a jury's or trial court's findings. *Fanning* v. *Hembree Oil Co.,* 245 Ark. 825, 434 S. W. 2d 822 (1969); *American Metal Window Co.* v. *Watson,* 238 Ark. 418, 382 S. W. 2d 576 (1964).

The evidence is undisputed that the appellant went to appellee's home, after a telephone conversation, and

inspected the motor appellee had advertised for sale; that appellant later that day called appellee on the phone and offered him $650 which appellee refused because the motor was equipped with a hydraulic power lift; that the parties agreed upon the $750 purchase price; that later in the day appellant sent his 16-year-old son with instructions to get the motor equipment and deliver his personal check (payment was later stopped) to appellee and then take the motor to a local boat dealer for installation; that the motor had such accessories as controls and a hydraulic power lift, one-third of which was bolted or welded to the engine at the time of the sale as an integral part of the motor; that appellant's son appeared driving a camper truck pulling appellant's boat; and that it was then discovered that the motor unit would not fit appellant's boat. Appellee denied that he was aware of the type boat on which appellant intended to use the motor. The appellee adduced evidence that the youth became very concerned about the immediate use of the boat and after requesting the use of appellee's telephone the boy returned and stated that he had talked with his father [appellant] who told him "to check with you [appellee] to see if you can help and what can be done." It appears that appellant was leaving town for the weekend. At the insistence of appellant's son, the appellee, for an additional charge of $50, agreed to cut down the transom or the back of appellant's boat to accommodate the motor; "hang" the motor on the boat, install certain controls and test fire the motor. It appears undisputed that it was specifically agreed that the appellee would not mount the hydraulic power lift or hook up the power steering apparatus. The appellee proceeded that evening and the next morning to cut the transom and mount the motor on the boat in accordance with this agreement. The engine, excluding the attached power lift, was tightly bolted on with two factory clamps and two bolts through the bottom legs of the engine and the transom. The unattached two-thirds part of the power lift was put in appellant's truck when the boy returned for the motor the next day (Saturday). Appellee testified that the engine was bolted down "for travel on the boat" and warned appellant's son that the power lift was not installed and he would have to have additional installation. Appellee and his witnesses testified that the power lift was an integral part of the motor and that it holds

or secures the motor to the boat. Appellant's son did not take the motor to the local dealer as instructed by his father, nor for additional installation as warned by appellee. With the aid of his girl friend's father, they hooked up the steering apparatus on the boat. The next day appellant's son and this girl were using the boat on the river when the boat tilted, the motor wrenched loose and was lost in the river.

Appellant testified that he had observed the motor and agreed to purchase it with appellee's assurance it would fit appellant's boat; that he had sent his son to deliver the check with instructions to take the boat to a certain marine dealer for installation and that he had not discussed installation with appellee when he purchased the motor. Appellant could not recall a telephone call from his son and denied ever authorizing his son to make the asserted agreement with appellee. Appellant's son admitted on cross-examination that: "It seems like I remember using the phone * * * I'm sure I tried to call him [appellant]." The boy denied that appellee warned him that there was anything defective about the motor installation. His girl companion could not recall that appellee warned them that the boat was not "water worthy" or said anything about the necessity of further installation. Another companion testified that appellant's son attempted to make a phone call to someone; that he understood that appellee was to bolt the motor on the transom and that appellant's son would have to get a local dealer to hook up the controls; and that from his knowledge of motors, the power lift would not assist in securing the motor to the boat. The local marine dealer testified that in his opinion appellee's mounting of the motor on appellant's boat was improper and would not measure up to the standard of workmanship generally employed by boat mechanics, and that the type or size of bolts used by appellee would not be used even for temporary installation. On cross-examination he did agree that if the power lift were installed with the 12 additional bolts it would give "additional security on the motor." He later testified, however, that the installation of the power lift would not aid in securing the motor to the boat so as to prevent shearing of the undersized bolts.

Appellee, a state policeman who was not in the business of selling boat motors, testified that he had agreed with appellant's son that: "I will bolt it exactly as it was bolted on my boat with this exception. I won't fool with the power lift." Further, that as the boy was leaving he warned him: "Go get your steering gear fixed up. Go get your power lift put on and when you do that the engine will be set on your transmission exactly as it had been on mine and I'd used mine for 6 years. The same engine. The same power lift." He also testified that if the power lift were installed there would have been 12 more bolts through the transom securing the engine to the boat. Appellee's testimony as to the circumstances surrounding this transaction was corroborated by his wife and two other witnesses.

It is strictly within the province of a jury or the trial court, sitting as a jury, to reconcile any conflicts in the testimony of the witnesses. *Sardin* v. *Roberts,* 244 Ark. 312, 424 S. W. 2d 889 (1968). We cannot disturb a finding or verdict merely because the evidence is contradictory and, of course, the court's findings, as a fact finder, have the same verity as a jury. *Pike County School Dist. No. 1* v. *Pike County Board of Education,* 247 Ark. 8, 444 S. W. 2d 72 (1969); *Green* v. *Maddox,* 245 Ark. 558, 433 S. W. 2d 144 (1968). The extent and nature of an agent's authority, when in dispute, is a question for the fact finder. *American Metal Window Co.* v. *Watson, supra.* These rules of law being long established, it follows that when we review the evidence most favorably to the appellee, with all reasonable inferences deducible therefrom, as we must do, there is substantial evidence to support the trial court's findings.

Affirmed.

HARRIS, C. J., not participating.

JONES, J., dissents.