Betty Ann WALKER et al *v.* Stanton
Owen STEPHENS

CA 81-141                                    626 S.W. 2d 200

Court of Appeals of Arkansas
Opinion delivered November 25, 1981
[Supplemental Opinion on Denial of Rehearing January 20, 1982.]

*Matthew T. Horan,* for appellants.

*Wright, Lindsey & Jennings,* by: *James D. Storey,* for appellee.

GEORGE K. CRACRAFT, Judge. Appellants appeal from a summary judgment order entered by the Circuit Court of Pulaski County which dismissed their actions for personal injuries against appellee, Stanton Owen Stephens, on a finding that their claims had previously been compromised and settled by their then attorney. Appellants contend that as they had offered proof that the compromise was agreed upon without their knowledge or consent, the question of the attorney's authority was one of fact which should not have been determined on summary motion and that the court further erred in upholding the settlement as to their minor children as same had never been authorized or approved by the Probate Court. We agree.

At the outset we wish to make it clear that the attorney presently representing these appellants did not represent them when the shameful conduct giving rise to this litigation occurred. That attorney has admitted his misconduct and voluntarily surrendered his license to practice law in the State of Arkansas. Due to the nature of the case and the manner in which it was presented, a more extensive than usual recitation of background is deemed necessary for an understanding of our decision.

## FACTS

On March 8, 1979, the appellant, Betty Walker, was driving a motor vehicle which collided with one operated by appellee, Stanton O. Stephens. The appellant, Angela Maxwell, and her child Terri, and Mrs. Walker's two minor children, Roderick and Kimberly, were passengers in the Walker vehicle and all of them suffered personal injuries in that accident.

The appellee was insured against such liability by Allstate Insurance Company. Shortly after the accident an

adjuster for Allstate contacted both appellants and was informed that all of them were represented by an attorney in Little Rock. The adjuster then contacted their then attorney requesting estimates on property damage, medical reports and expenses, all of which were furnished by their counsel as the condition of the parties progressed.

Shortly after the accident a settlement for appellant Maxwell's property damage was agreed upon by counsel and Allstate. Allstate issued its check in settlement of that claim in the amount of $630. No complaint is made here of either the authority of the attorney to make that settlement or the disposition of the funds.

Thereafter and for a considerable period counsel continued to furnish reports and other data to Allstate in settlement negotiations on the personal injury claims of all appellants. The appellant Walker, a member of the armed forces, prior to reporting to her duty station in South Carolina, executed to her then attorney a power of attorney authorizing him to compromise and settle her claim and to receive and endorse any drafts which were received in her behalf. She made the power conditioned upon her approval. There is no indication in the record that this power of attorney was ever furnished to Allstate or that Allstate relied on it in any way.

On July 13 appellants' then attorney and Allstate agreed upon a settlement of appellant Walker's claim for $7,400, inclusive of $170 in settlement of the claims of the two minors. Allstate issued its check in that amount payable jointly to the appellant and her then attorney. Mrs. Walker denied that settlement was made with her knowledge, consent or approval. The attorney admitted that the settlement was made without appellant's knowledge or consent and that he forged the endorsement upon that check and pocketed the proceeds.

On the 13th of August, after negotiation of counsel, the Allstate agent met with appellant Maxwell and her then

attorney, at which meeting several offers and counter-offers were rejected. Before concluding that meeting appellant Maxwell and her counsel conferred privately on settlement figures. The attorney then informed the agent that they would settle the claim for no less than $30,000.

On August 14th the representative of Allstate communicated to the attorney an offer to settle the claim of appellant Maxwell for $18,500 and that of her child for $500. Later that day the attorney informed Allstate that the offer was accepted by her. Her attorney then received from Allstate a check payable jointly to appellant Maxwell, her child and the attorney and two release forms. The release forms were returned to Allstate duly executed by appellant Maxwell. Appellant Maxwell admitted signing the release, but stated that the purpose for which it was being executed had been misrepresented to her. She expected to receive the sum of $25,000 in settlement and did not approve the settlement in lesser amount which was made without her knowledge and consent. The attorney in his affidavit admitted this to be true and that he had forged the endorsements on the settlement check.

Upon learning of the action of their attorney the appellants, Walker and Maxwell, retained their present counsel who filed personal injury suits against the appellee on behalf of the appellants and their minor children, and demanded a trial by jury. Appellee responded by motion to dismiss the complaint under Rule 12 (b), Arkansas Rules of Civil Procedure, asserting that the claims made by appellants had been compromised by their former attorney and that they could not now maintain these actions. Appellants responded that the compromise was void for want of authority on the part of the attorney to compromise the claims of the adult appellants, Walker and Maxwell, and that the claims of the minor children could not be effectively compromised without authorization from the Probate Court as required by law.

At a hearing held on the motion it was agreed by the parties that under the provisions of Rule 12 (b), Arkansas

Rules of Civil Procedure, matters outside the pleadings were to be submitted in support of the motion, and the court should therefore treat the matter as a motion for summary judgment and dispose of it under provisions of Rule 56, Arkansas Rules of Civil Procedure. Our rules do so provide and the motion was so disposed of.

At that hearing affidavits and counter-affidavits were introduced and evidence presented to the court establishing those facts heretofore outlined. The court found that the then attorney did have the authority to compromise the claims of his clients, and granted the motion for summary judgment dismissing all of the appellants' complaints. We agree with the appellants that this was in error.

The principle of law which we must follow in review of summary judgment decisions is well established. On such motions the moving party has the burden of demonstrating that there is no genuine issue of fact for trial and any evidence submitted in support of the motion must be viewed most favorably to the party against whom the relief is sought. Summary judgment is not proper where evidence, although in no material dispute as to actuality, reveals aspects from which inconsistent hypotheses might reasonably be drawn and reasonable men might differ. *Hendricks v. Burton,* 1 Ark. App. 159, 613 S.W. 2d 609 (1981); *Dodrill v. Arkansas Democrat Co.,* 265 Ark. 628, 590 S.W. 2d 840 (1979); *Braswell v. Gehl,* 263 Ark. 706, 567 S.W. 2d 113 (1978). The object of summary judgment proceedings is not to try the issues, but to determine if there are any issues to be tried, and if there is any doubt whatsoever the motion should be denied. *Trace X Chemical, Inc.* v. *Highland Resources, Inc.,* 265 Ark. 468, 579 S.W. 2d 89 (1979); *Ashley* v. *Eisele,* 247 Ark. 281, 445 S.W. 2d 76 (1969). A motion for summary judgment cannot be used to submit a disputed question of fact to a trial judge. *Griffin* v. *Monsanto Co.,* 240 Ark. 420, 400 S.W. 2d 492 (1966).

The record is not entirely clear as to the basis for the ruling — whether it was based upon a premise that the

retaining of an attorney in every instance carries with it the implied authority to settle his client's claim, or the proposition that one clothing his attorney with ostensible authority to compromise a claim is bound by his actions. The court has by his ruling in any event determined that *as a matter of law* the appellants' then attorney had authority to compromise the claims.

If this determination was based upon implied authority arising from the contract of hire, we conclude that the trial court erred in so holding. It is well settled that an attorney's contract of employment implies that he is authorized to take those procedural steps deemed by him to be necessary and proper in the conduct of the litigation whether in pursuit or defense of the claim. His actions in those matters, in the absence of fraud, are regarded as the acts of his client who is bound by those actions, but the mere fact that counsel is retained does not, in and of itself, carry an implication of authority to compromise his client's claim and to hold otherwise would vest the attorney with far more power than his retainer requires or implies. *McCombs* v. *McCombs*, 227 Ark. 1, 295 S.W. 2d 774 (1956); *Cullin-McCurdy Construction Co.* v. *Vulcan Iron Works*, 93 Ark. 342, 124 S.W. 1023 (1910).

While we have no reported cases dealing with apparent authority as to attorneys, we do have ample authority from our law of agency on which to draw. Our law is well settled that an agent acting within the apparent scope of his authority, even though in violation of specific instructions may bind his principal if the one with whom he deals does not have notice of these restrictions. In *Mack* v. *Scott*, 230 Ark. 510, 323 S.W. 2d 929 (1959) the Supreme Court made the following statement about apparent authority:

'Apparent authority in an agent is such authority as the principal knowingly permits the agent to assume or which he holds the agent out as possessing; such authority as he appears to have by reason of the actual authority which he has; such authority as a reasonably

prudent man, using diligence and discretion, in view of the principal's conduct, would naturally suppose the agent to possess,' *Pierce* v. *Fioretti*, 140 Ark. 306, 215 S.W. 646. See also, *Ozark Mutual Life Association* v. *Dillard*, 169 Ark. 136, 273 S.W. 378.

We have concluded from a reading of the great weight of authority and better reasoned cases of sister states that that same rule is applicable to the ostensible authority which may be conferred upon an attorney. *Cohen* v. *Goldman*, 85 R.I. 434, 132 A. 2d 414 (1957); *Arizona Title Ins. Trust Co.* v. *Pace*, 8 Ariz. App. 269, 445 P. 2d 471 (1968); *United States Plywood Corp.* v. *Neidlinger*, 41 N.J. 66, 194 A. 2d 730 (1963).

Even though we conclude that there may be circumstances in which a client may be bound by the unauthorized acts of his attorney, we further conclude that the trial court erred, if he so held as a matter of law on motion for summary judgment. The question of whether or not an agent is acting within the scope of his actual or apparent authority has always been held to be a question of fact for the jury or trier of fact to determine. *Babbitt* v. *Gordon*, 251 Ark. 1112, 476 S.W. 2d 795 (1972); *Baum* v. *Rice-Stix Dry Goods Co.*, 203 Ark. 581, 157 S.W. 2d 767 (1942).

In this proceeding the court was not trying the issue but seeking to determine whether there were issues of fact to be tried. While it might be a permissible result for a trier of fact to find from this evidence that ostensible authority to settle his client's claim has been conferred by the client, the denial of that authority by appellants raised a disputed question of fact which was not appropriate for disposition on motion for summary judgment.

The appellants further contend that even if the appellant parents are bound by the action of their attorney, the trial court erred in dismissing the action as to the minor children involved as no guardian had been appointed for

these minors and no approval of the compromise of their claim was ever obtained in the Probate Court. We agree.

This action was brought by the appellant parents in their capacity as natural guardians and next friends of minors, as required by our statutes. The minors' claims were purportedly settled by the attorney acting under authority of the natural parent. It is axiomatic that the parents could neither expressly nor by implication confer upon a third person that authority which they themselves did not possess. While duly appointed guardians of the estates of minors have certain statutory and inherent powers with regard to claims of their wards, we find no cases, and none has been cited to us, which would allow a non-guardian, acting solely in the capacity of parent, to compromise a tort claim of a minor. The great weight of authority, from which there is little dissent, is stated in 67 (A) C.J.S. 470, *Parent and Child*, § 114, is as follows:

> In the absence of statutory authorization or proper procedure in court, a parent has no authority, merely because of parental relationship to waive release of compromise claimed by or against his child. This rule applies to a waiver, settlement, or release of the child's right or action for a personal injury or other tort.

The cases cited in support of the proposition so hold. *Julian* v. *Zayre Corporation*, ___ R.I. ___, 388 A. 2d 813 (1978); *Wood* v. *Dic/Underhill and Universal Builders Supply Co.*, 144 N.J. Super. 364, 365 A. 2d 723 (1976); *Burge* v. *City and County of San Francisco*, 41 Cal. 2d 608, 262 P. 2d 6 (1953).

Prior to the enactment of Ark. Stat. Ann. § 57-136 (Supp. 1981) our court held that a natural parent was not even authorized to collect monies justly due a minor child absent his appointment as guardian. *Wood* v. *Claiborne*, 82 Ark. 514, 103 S.W. 219 (1907). Section 57-136, cited by appellee as authorizing settlement of claims for the minor, which amount to less than $1,000 per annum by a parent

does not, in our opinion, dictate that conclusion. It merely provides that "any person *under a duty to pay* or deliver money or personal property to a minor" in amounts not to exceed $1,000 per annum may perform their duty by payment to the person having the care and custody of the minor for the use and benefit of the minor without the court being required to inquire into the applications of the proceeds. We do not construe this statute as dispensing with the necessity of probate proceedings in the settlement of a minor's claim for tort.

Reversed and remanded.

Corbin and Glaze, JJ., dissent.

Supplemental Opinion on Motion for Rehearing delivered January 20, 1982

George K. Cracraft, Judge. The appellants in their motion for a rehearing of a portion of our decision of November 25, 1981, contend that we seemingly hold that a settlement of a minor's tort claim can never become binding, absent approval of the probate court acting pursuant to the procedures set out in Ark. Stat. Ann. § 57-638 (Repl. 1971). By this supplemental opinion we wish to make it clear that we did not intend to imply by the concluding portions of that opinion that circuit courts do not have authority to give judicial approval to settlements reached in those cases

pending before them which have been brought by guardian or next friend on behalf of an infant. The authority of such courts to effectively give judicial approval in such cases was reaffirmed in *Walker* v. *Killoren Electric Co.*, 243 Ark. 752, 421 S.W. 2d 893 (1967). Our holding in this case is limited to the facts which are presented by the record before us. We hold no more than that a parent, acting solely in that capacity, has no power to effectively authorize a settlement of a minor's tort claim without the approval of a court of proper jurisdiction.